JASPER W. ROBINSON, APPELLEE, v. UNION AUTOMOBILE INSURANCE COMPANY, APPELLANT.

FILED APRIL 10, 1924. No. 22682.

1. Insurance: AGENCY. Under sections 7757, 7772, Comp. St. 1922, one who solicits an application for insurance of any kind, or who, with authority, receives or receipts for any money on account of or for any contract of insurance made by him, although the policy may not be signed by him, shall be deemed, to all intents and purposes, the agent of the insurance company.

2. ———: POLICY: REFORMATION. It is a general rule that, if, by inadvertence, accident, or mutual mistake, the terms of the contract are not fully set forth in the policy of insurance, it

may be reformed so as to express the real agreement of the parties.

3. ———: ———: ———. When a soliciting agent of an insurance company and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy, later issued by the company, omits one of the essential elements of the contract, which is not discovered by the insured until after a loss occurs, he may then have the policy reformed so as to express the real agreement of the parties, and his failure to promptly examine the policy when received and discover the departure therein from the real agreement will not defeat his right to have reformation of the policy.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Doyle & Halligan, J. S. Garnett* and *George N. Foster,* for appellant.

*Sullivan, Squires & Johnson, contra.*

Heard before Morrissey, C. J., ROSE, DAY and GOOD, JJ., and REDICK, District Judge.

GOOD, J.

This is an action to reform an automobile insurance policy, so as to make it cover loss caused by collision, and to recover under the policy as reformed. Defendant admits the issuance of the policy, but denies that it covers, or was intended to cover, loss by collision. The trial resulted in a judgment for plaintiff, reforming the policy and awarding him judgment for the amount of his loss. Defendant appeals.

Was plaintiff entitled to a reformation of the policy? The correct answer to this question determines this appeal. There is little, if any, conflict in the evidence that is material to the issues raised.

The defendant is, as its name implies, an insurance company which insures the owners of automobiles against loss by fire, theft, lightning, tornado, liability, property damage, collision, etc. Its home office is in the city of Lincoln, Ne-

braska. One Brown was its local soliciting agent at Broken Bow, where plaintiff resided. Brown was furnished literature and rate cards and authorized to solicit insurance, take applications and forward to the company, where, if approved, a policy was issued and sent to the agent and by him delivered to the insured. The agent also collected the premium. Brown called upon the plaintiff and solicited him to take out a policy covering his automobile in defendant company. The character of policies and coverage, together with rates therefor, were discussed between plaintiff and Brown. Plaintiff indicated that he desired a full or total coverage policy that would protect him against loss by fire, theft, tornado, liability and collision. Brown consulted his rate card and informed plaintiff that such a policy would cost, for a three-year term, $100. The plaintiff assented and drew his check for $100, payable to Brown, and Brown then filled out an application which plaintiff signed. This application was forwarded to the company, and within a few days a policy was sent to the agent and by him delivered to plaintiff. It is conceded that the policy, as issued, does not cover loss occasioned by collision. Plaintiff did not read nor examine the policy until after the loss occurred. He then made claim to the company for the loss, and the company declined to pay because the policy did not cover collision insurance. Plaintiff was not aware of this until so informed by the company, and was not convinced that the policy, as written, did not cover loss by collision until he had submitted it to his attorneys. Thereupon, this action was brought to reform the policy as above stated.

The written application was introduced in evidence. The following is the form of the application:

"Automobile Application and Contract.

"Union Automobile Insurance Company.

"Paid-up Capital, $100,000. (Stock Company) Paid in Surplus, $25,000.

"Fire, theft, tornado, earthquake, liability, property damage and accidental death.

"Premium, $100.

"Fire, theft, tornado, earthquake, etc., only.

"Premium, $............................

"Liability, property damage and accidental death only.

"Premium, $............................

"Term 36 months."

Then follows a schedule of declarations which is not material to the present consideration. It will be observed that the application does not, in terms, mention collision insurance. The president of the insurance company testified that it was the custom, when collision insurance was to be included, for the agent to write a letter, informing the company of such fact, or to make a notation upon the application that collision insurance was desired. The form of policy issued does not, as stated, cover collision insurance, and the president of the company testified that, when collision insurance was to be included, a rider was placed upon the policy especially covering loss from this cause. The president produced a rate card, which he testified was in force at the time, and which showed the rate on plaintiff's automobile, for three years, for general coverage, except collision insurance, to be $125, and that the additional rate, for the same time, for collision insurance was $65. He testified that this rate card was furnished to all of the agents for their guidance. However, it will be observed that the policy was issued for a premium of $100, which does not conform to the rate, as disclosed by the rate card, when collision insurance is not included. Brown, the agent who solicited the insurance, was called as a witness and testified that he was furnished a rate card for 1919, which had been destroyed when the new rate card for 1920 was issued; that the 1920 rates were considerably higher than the 1919 rates. He produced the 1920 rate card, and that disclosed that the rate upon plaintiff's car, for a three-year period, for complete coverage, including collision insurance, was $112.50. The witness Brown further testified that the rate on the card, furnished him in 1919, for complete coverage, including collision insurance, was $100. There can be no question whatever that both plaintiff and the agent Brown

understood that plaintiff was contracting for a policy which would insure against loss by collision.

Defendant advances several propositions of law, which, it argues, if properly applied, will defeat plaintiff's right to a reformation of the contract of insurance. Its first proposition is that, in the absence of fraud or mistake, all previous verbal understandings are merged in the written contract, and it is conclusively presumed to contain the entire engagements of the parties with all the conditions of their fulfilment.

We are in accord with the principle stated, but fail to see the application of it to the situation in hand. Under sections 7757, 7772, Comp. St. 1922, Brown, in taking the application, was the agent of the company. It could act only through an agent. The agent was furnished a rate card and authorized to solicit insurance. He had ostensible authority to state and quote to a prospective applicant the rate for any kind of policy he was authorized to solicit. He did quote to and agree with the plaintiff upon the rate. In so doing he was the company. He was also acting for the company in taking plaintiff's application. Both plaintiff and the agent Brown stated positively that the plaintiff desired, ordered and paid for a policy that would protect him from loss by collision. It was the intention of both parties to have the application include this feature. If the application was not specific enough to cover it, it is obvious that there was a mutual mistake of the parties.

It is next contended that, where a party accepts a contract of insurance and makes no effort to examine or read the policy until a loss occurs, he is bound by the terms of the policy as written. Several authorities are cited as sustaining this principle, and, as applied to the situations in the cited cases, the principle may be accepted as sound. The cases cited, however, in the main are actions on contracts as written and where one or the other of the parties seeks to avoid the legal effect of some clause in the contract of which he had no personal knowledge. They are not actions for reformation of the contract. In such an action,

where one party seeks the aid of a court of equity to require the contract to conform to the actual intent and agreement of the parties, a different rule is applicable. It is a general principle, sustained by abundant authority, that if, by inadvertence, accident, or mutual mistake, the terms of the contract are not fully set forth in the policy, it may be reformed so as to express the real agreement. *Cook v. Westchester Fire Ins. Co.*, 60 Neb. 127; *Grand View Building Ass'n v. Northern Assurance Co.*, 73 Neb. 149; *Lansing v. Commercial Union Assurance Co.*, 4 Neb. (Unof.) 140; *Slobodisky v. Phœnix Ins. Co.*, 52 Neb. 395; *Dolvin v. American Harrow Co.*, 125 Ga. 699, 28 L. R. A. n. s. 785, and subnote "h" thereto on page 831; *Thompson v. Phenix Ins. Co.*, 136 U. S. 287; 14 R. C. L. 902, sec. 80.

While the authorities are not unanimous, we think the better rule—the one in consonance with reason and supported by the most of the courts—is that a policy may be reformed where it does not conform to the agreement of the parties, though the mistake, so far as the company is concerned, was that of a mere soliciting agent, with no power to issue a policy. 14 R. C. L. 902, sec. 80, and note to *Floars v. Ætna Life Ins. Co.*, 11 L. R. A. n. s. 357. The provisions of the statutes cited above are alone sufficient to compel the adoption of the rule announced.

Defendant further contends that, where the insured receives a policy of insurance, ostensibly in response to his written application therefor, and the policy does not conform to the agreement of the parties, the insured is bound, as a matter of law, to examine the policy within a reasonable time after its receipt, to discover obvious departures therein from the one which he supposed he had received, or he will be held as having accepted the policy as complying with his application. In support of this proposition, defendant cites *American Ins. Co. v. Neiberger*, 74 Mo. 167; *Metzger v. Ætna Ins. Co.*, 227 N. Y. 411; *Bostwick v. Mutual Life Ins. Co.*, 116 Wis. 392, 67 L. R. A. 705.

In the first of the cases cited, the action was to recover on a premium note. The policy for which it was given did

not conform to the agreement between the insurance company's agent and the insured. The latter became aware of this fact as soon as the policy was received and did not reject the policy until several months later. It was held that he should have promptly rejected the policy on discovering that it did not comply with the agreement, and that his failure so to do rendered him liable on the note, on the ground that, by his delay, he was held to have accepted the policy as written. In the instant case, the insured did not discover that the policy did not comply with the agreement until after the loss occurred.

In *Metzger v. Ætna Ins. Co., supra,* the action was to reform a policy of fire insurance which, while issued for a term of one year, was to cover a builder's risk, and, by a rider attached to the policy, limited the liability to the time while the building was in process of erection and completion, and provided that all liability on the policy should cease when the building became occupied, in whole or in part. It was there held: "While in equity a recission of a contract may be adjudged on the ground of a unilateral mistake in its contents, in order that a reformation may be adjudged, there must be mutual mistake or inadvertence or the excusable mistake of one party and fraud of the other. There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent." It was held that the mistake was not mutual. In the instant case the evidence disclosed that the minds of the two parties met, but the policy did not conform to their mutual intent, and hence the mistake was mutual.

In *Bostwick v. Mutual Life Ins. Co., supra,* the action was by the insured to recover premiums paid upon a policy that differed, in terms, from the one which the insured had ordered. In that case, the insured desired a ten-payment policy, and the agent for the company wrote the application for a policy that would require insured to make annual payments during his life. When the policy was received, there was a letter, the first words of which di-

rected the insured's attention to the nature of the policy, and that it was different from the one which he desired. He complained to the agent, and considerable correspondence ensued, but he did not seek a cancelation of the policy until the lapse of several months. It was held that he was not entitled to recover. An examination of the case leads the writer to the view that there are many expressions contained in the opinion that were unnecessary for a determination of the questions. While the principle, as contended for by defendant, is announced in that case, it seems that it was wholly unnecessary for the determination of the case, as it might have turned solely upon the question of the laches of the insured in not promptly rejecting the policy upon discovery that it was not of the character that he had ordered.

In the instant case, we are asked to hold that plaintiff is not entitled to a reformation of the policy because he failed to examine it and promptly discover that it did not contain the provision for which he stipulated. To so hold would permit the insurance company to take advantage of its own wrong or of a mutual mistake. In this case, there was no laches on the part of the plaintiff, unless it was in his failure to examine and read his policy and ascertain therefrom that it did not cover collision insurance. The policy is long and contains many conditions and limitations, and we seriously doubt if one, other than a lawyer or one versed in insurance, would know, from a casual reading of the policy, that it did not cover collision insurance. But, in any view of the case, there was a mutual mistake, and the plaintiff sought the reformation of the contract, to conform to the agreement of the parties, as soon as the mistake was discovered. The defendant has not been injured unless it has carried the insurance for a less premium than its regular rates, which, by the way, is not entirely clear. That the policy as issued did not conform to the agreement of the parties is due either to the mutual mistake, caused by defendant's agent, or to the fraud on the part of the company in not issuing the proper kind of

policy. In either event, we think the plaintiff was entitled to have the policy reformed.

It follows that the judgment of the district court should be and is

AFFIRMED.

Note—See Insurance, 32 C. J. p. 1058, sec. 133; p. 1140, sec. 247; p. 1142, sec. 249—Reformation of Instruments, 34 Cyc. pp. 925, 949.