KRUG PARK AMUSEMENT COMPANY ET AL., APPELLEES, V. NEW YORK UNDERWRITERS INSURANCE COMPANY, APPELLANT.

FILED MAY 31, 1935. No. 29024.

240

*Wells, Martin, Lane & Offutt,* for appellant.

*Ziegler & Dunn, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an appeal by the defendant, New York Underwriters Insurance Company, from a decree in equity in the district court for Douglas county, reforming an insurance policy issued by the defendant, and awarding judgment to Frank Crawford, as trustee, substitute for the First National Bank.

Plaintiffs in their amended petition allege that on the 21st day of May, 1932, the defendant executed and delivered its policy of insurance whereby it insured against loss by fire certain property, described therein, of the Park Bathing Company, a corporation, for the term of one year, said property consisting of towels and bathing suits used by said company in its business; that on or about September 1, 1932, the bathing company, being largely indebted to plaintiff, Krug Park Amusement Company (hereafter referred to as the park company or plaintiff), as rent for the premises where said personal property described in the policy was located and used, in part payment of its rental indebtedness, transferred all of its right, title and interest in and to said personal property to said plaintiff, and continuously thereafter, up to and including the time of the fire hereinafter mentioned, plaintiff was the owner of said property so insured, and that at all said times said property was in possession and control of the plaintiff; that at the time said policy was issued, and at all times, the insured property was in the building located on property leased by the bathing company from plaintiff and used in connection therewith, and said bathing company had surrendered the use and occupancy of said premises and said

personal property to plaintiff to be held and used as security for the rent indebtedness of the bathing company to plaintiff until such time as said bathing company might be able to pay said indebtedness; that plaintiff was authorized to keep said property insured for the protection of the interests of both parties, and that the agent of said defendant who contracted for and issued said policy and received the premiums thereon was informed, at the time of the issuance of said policy, of the aforesaid arrangement between plaintiffs and the bathing company; that on September 1, 1932, in an action in forcible entry and detainer, plaintiffs recovered judgment against the bathing company for restitution of the leased premises, and that since the 2d or 3d day of September, 1932, plaintiff has been the sole owner and in exclusive possession of said personal property, which was used as a part of the equipment of said bath house and for the purpose for which same was used at the time said policy was issued.

Plaintiffs further allege that on the 2d or 3d day of September, and again on September 26, 1932, after plaintiffs had become the owner of said property, plaintiffs applied to Allan A. Tukey, Inc., who was the authorized agent of said defendant to act for said defendant in the premises and who was in possession of the policy, for a transfer of said policy from the name of the Park Bathing Company to that of the park company, and that said agent agreed to make said transfer and deliver said policy so changed and transferred, said transfer to be effective from the 2d or 3d day of September, 1932, and be binding on said defendant for the remainder of said period of one year from September 1, 1932; that said defendant, by oversight and mistake, neglected to make said changes as agreed upon and to change said policy from bathing company to plaintiff, without the knowledge or consent of the plaintiff; that on September 27, 1932, the property covered by said policy was totally destroyed by fire, whereby plaintiff sustained a loss of $7,800. The petition then alleges that proofs of loss were furnished to and accepted by de-

fendant, and said loss had been adjusted by an adjuster of the defendant; that in July, 1932, the park company executed a trust deed to the First National Company to secure a bond issue of the park company in the sum of $65,000, in which the park company agreed to keep the property described in said trust deed insured against fire for at least 60 per cent. of the value thereof, for the benefit of said trustee; that by oversight and mistake the park company failed to have attached to said insurance policy a rider as provided in said trust deed making any loss payable to the trustee, and that it was the intent and purpose of the park company and said defendant, through its agent aforesaid, to attach such rider to said policy.

As a second cause of action, plaintiff alleges that on November 29, 1932, the bathing company transferred to the park company all its right, title and interest, if any, in and to the above described insurance policy and to all sums due thereunder on account of said fire loss. Plaintiff prayed that the policy be reformed so as to make the Krug Park Amusement Company the assured therein, and to provide that the loss should be first payable to the trustee as its interest may appear, and for a decree in favor of plaintiffs in the sum of $2,500.

The defendant moved to require plaintiffs to elect between the causes of action set forth in the petition, which motion was overruled. Defendant then demurred to the petition on several grounds, which demurrer was overruled. Defendant then answered and admitted the incorporation of all the parties, and the issuance of the policy, and admitted that on or before September 1, 1932, the Park Bathing Company transferred all its right, title and interest in the insured property to the park company, and that said park company was the sole owner and in possession of said property at the time of the loss; admitted that the fire occurred about September 27, 1932, and damaged a part of said personal property, and denied each and every other allegation of the petition. Defendant further denied that Allan A. Tukey, Inc., was the agent of defendant, or

authorized to enter into any contract of insurance on behalf of defendant, or to modify, change or add to any policy of insurance that had been issued by defendant; denied that it entered into any contract of insurance with plaintiffs, or either of them, and alleged that it had no notice or knowledge of the transfer of the property, described in said policy, from the bathing company to plaintiff; and alleged that said policy had not been assigned to the park company prior to the loss, or, if an assignment was made, no notice of the assignment was given to the defendant, and defendant has not consented to any assignment at any time.

Defendant further alleged that said policy provided, among other things: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance, * * * whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss." And defendant alleged, by reason of said transfer of title and the retention of possession and control of said property by the park company, the policy was breached and thereby became null and void and was not in force and effect at the time of the loss.

Plaintiffs reply denying the allegations of new matter in the answer, and alleging that the change in title of the property did not increase the hazards or add to or contribute to the loss caused by destruction of the property of the insured, and that said park company, with the consent of the bathing company, had insured said property in the name of said bathing company and paid the premium thereon.

The decree by the district court found generally in favor of the plaintiffs and against the defendant, and that in the early part of the year 1932 the park company was the owner of a large portion of the capital stock of the bathing company and was procuring the rest of the capital

stock of the bathing company, and was then in possession and control of the property then in the name of the bathing company, including the property covered by the insurance policy involved herein, which property had been in the possession and control of said park company for a long time prior to the issuance of the policy sued on, and that the policy sued on was procured by said park company acting on behalf of the Park Bathing Company, and that Allan A. Tukey, insurance broker, had full knowledge of the acquisition of said bathing company by said park company and of the negotiations through which it was obtained by the park company, and of the possession and control thereof by said park company, and that on the 21st day of May, 1932, the said Allan A. Tukey procured said policy under an agreement with the park company to procure its assignment to said plaintiff whenever the transfer of said property to said park company should be formally completed; that prior to the fire said broker had received instructions from the park company to make said assignment and transfer said policy, which he agreed to do, but had not done so at the time of the loss by fire. The court further found that after the fire said policy was assigned to the park company, and that there had been no change of ownership or possession or increase of hazard on said policy from the time of issuance of said policy until its destruction by fire, and that the insured property was of the value of more than $5,000, and rendered a decree that the plaintiffs were entitled to a reformation of the policy as prayed in their petition, and in favor of the plaintiffs and trustee for the sum of $2,641.26.

There is little dispute in the evidence, which establishes the following facts: The Krug Park Amusement Company was the lessee of about 16 acres of land upon which it conducted an amusement park and sublet to other parties portions of the grounds upon which to conduct various forms of amusement. Among others, it sublet to the Park Bathing Company a part of the premises upon which to construct a bathing pool and bath house and conduct a swim-

ming and bathing establishment in the year 1919, in consideration of certain rentals to be paid by the bathing company. Fire insurance policies were carried by the park company and its lessees in their own names respectively covering their respective interests. The original policy covering the property of the bathing company, of which the policy in suit issued May 21, 1932, was a renewal, was procured from Martin Bros. & Co., the local agents of the defendant, about the year 1928, through the agency of Allan A. Tukey, Inc., an insurance broker having no authority to sign or issue policies for the defendant, all of which were signed and issued by Martin Bros. & Co., Tukey collecting the premiums and accounting therefor to Martin Bros. & Co., who delivered the policies to Tukey, who retained possession of them. The policies were all issued in the name of the Park Bathing Company, the renewals, in the ordinary course, being ordered by Tukey from Martin Bros. & Co. The Krug Park Amusement Company and the Park Bathing Company were separate corporations having their own officers and directors, the amusement company owning all stock in both companies, except $50,000 of the stock of the bathing company which was owned by E. John Brandeis, the bathing company leasing from the amusement company that part of the premises used as a bathing resort, at an annual rental. Some years prior to 1932 the bathing company was seriously in default in payment of rent under its lease, and the amusement company took possession and control of the property of the bathing company until such time as the rentals due from the bathing company were brought up to date, which was never accomplished. No steps were taken to forfeit the lease of the bathing company until September 1, 1932, when by judgment in forcible entry and detention the lease of the bathing company was terminated and the amusement company became the owner of all its assets by transfer from the bathing company. Up to March 31, 1932, the two corporations were conducted as separate institutions, although the management and control of the bathing com-

pany had been in the hands of the park company for a number of years; but the policies of insurance upon the bathing company property had always been carried in the name of the bathing company, the owner, and had never been transferred to the park company prior to the fire which occurred September 27, 1932.

On March 1, 1932, S. M. Fox and his associates acquired all of the stock of the Krug Park Amusement Company and of the Park Bathing Company, except $50,000 thereof owned by E. John Brandeis, and from that time forward operated the park company and bathing company as one institution, and sometime in June or July, 1932, notified Tukey that they were taking title to the bathing company property, and early in September notified him that they had taken title and wanted the policy of insurance transferred to the park company, and on September 26 again inquired of Tukey as to the transfer, and he said he was attending to it, that he would have to see whether the trust deed of the park company covered the property of the bathing company, and, if so, have the policy indorsed payable to the mortgagee as its interest might appear. On that day Tukey communicated with the First National Bank or trustee, but was unable to secure the necessary information, and again on the 27th, when the officer at the bank said they would check up the matter, but the information was not forthcoming until after the fire on the night of the 27th. Tukey at no time prior to the fire gave any notice to Martin Bros. & Co. of the change of possession or title from the bathing company to the park company, nor at any time did he request that the policy be transferred from the bathing company to the park company, and such transfer or consent thereto was never obtained.

Tukey, at least as early as the fall of 1931, knew that the park company was using and operating the properties of the bathing company as a part of the general facilities of the amusement company, but had no knowledge of the arrangements between the two companies by which that

situation was brought about. And while the amusement company had been in possession and operating the bathing company's property as a part of the amusement company's business, it was only doing so until such time as the rental default of the bathing company should be brought up to date. It did not acquire title to 'the bathing company property until its judgment in the forcible entry and detainer suit about September 1, 1932, whereby the lease of the bathing company was terminated, although the bathing company had ceased to function, so far as the operation of the bath house and pool were concerned, for several years. However, separate accounts were kept for the two companies and their separate entities maintained. The bathing company did not surrender its lease or the title to its property by turning over the management to the park company as security for back rent, as alleged in the petition.

It is conceded that Allan A. Tukey, Inc., was a mere insurance broker so far as defendant is concerned, having no authority to bind the defendant by contract of insurance, nor to sign and issue policies; but on the contrary it appears that Martin Bros. & Co. were the only agents authorized to issue policies or consent to any transfer, and, in fact, the only engagement which Tukey made with the plaintiff was to procure a transfer or assignment of the policy to the plaintiff from Martin Bros. & Co. True, it is now claimed that prior to the renewal of the policy in suit plaintiff and Tukey had an agreement that the renewal policy should be made to the bathing company and transferred to the park company when it acquired title, but there is no allegation in the petition to that effect, and the evidence claimed to support this contention does not exist. Plaintiff relies upon the testimony of Mr. Fox, president of the amusement company, as follows: $30,000 insurance was carried on bathing company property, and before it was renewed witness ordered it cut down to $22,500. (This was accomplished by allowing the excess to expire.) Policy in suit was renewed upon my order.

"Q. State what if any conversation you had with him (Tukey) at that time (renewal) as to who you were representing and in whose behalf you were insuring this property. A. When we discussed the insurance condition of our park we also discussed the indebtedness of the Park Bathing Company to the Krug Park Amusement Company. At that time we canceled some of the policies so that the insurance that was covered would cover the obligation of the Park Bathing Company to the Krug Park Amusement Company. * * * Q. What I am inquiring about now is what conversation you had with him regarding whose interest you people, you, were insuring in this property? A. I stated it right in there, the conversation that I wanted the indebtedness covered to protect Krug Park Amusement Company, and I cut down the insurance to cover that indebtedness. Q. That was to be how much? A. 17 thousand 5 hundred, cut down from 30. Q. What conversation if any did you have with him at that time or later prior to the fire as to the so-called legal title to the Park Bathing Beach property? * * * A. I told him in June at the time we rearranged this insurance that the Krug Park Amusement Company was going to take legal steps for this property."

On cross-examination he testified that the conversation about canceling part of the insurance was in June, 1932; talked with him about insurance before we purchased the property; is not sure he had any conversation after we purchased it, but talked to him in June; knew in March that policies were written in bathing company's name.

Mr. Tukey testified that order to cut the insurance down was in June or July; that his first talk about the amusement company taking title was in June; had previous conversations about insurance, but could not recall them.

All this amounts to is simply that Fox desired the insurance on bathing company property to be cut down to the amount of its indebtedness to the park company, but, as the latter was in possession and control of all the property of the former, the policies were to remain as they

were until the park company acquired title. But, even if given the full effect claimed by plaintiff, Tukey had no authority to change the policy and took no action for that purpose, and the insurance company was not bound by such a contract, if made, the same being beyond the actual or apparent scope of his agency. It is the contention, however, of the plaintiff that Tukey was the agent of the defendant company for the purpose of procuring an assignment of the policy by virtue of two sections of the statutes of Nebraska reading as follows:

Section 44-213. "Every agent or broker who shall solicit an application for insurance of any kind shall, in any controversy between the insured or his beneficiary and the company issuing any policy upon such application, be regarded as representing the company and not the insured."

Section 44-307. "Any person, firm or corporation in this state who shall with authority receive or receipt for any money on account of, or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall with authority receive or receipt for money from other persons to be transmitted to any such company or individual aforesaid for a policy or policies of insurance, or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, or who shall in any wise make or cause to be made any contract or contracts of insurance, for or on account of such company aforesaid, shall be deemed, to all intents and purposes an 'agent' or 'agents' of such company."

There can be no question but at common law Tukey had no authority to bind the defendant insurance company by any contract of insurance, and that any knowledge Tukey may have had prior to and at the time of the issuance of the policy would not be imputed to the insurance company. *Farmers & Merchants Ins. Co. v. Graham,* 50 Neb. 818; *Lowe v. St. Paul Fire & Marine Ins. Co.,* 80 Neb. 499; 32 C. J. 1054. And the only question for our decision

is whether or not by the statutes above quoted Tukey was such an agent of the defendant that his knowledge of the transfer of the possession of or title to the bathing company property could be imputed to the defendant. It will be remembered that no notice of the change of possession or transfer of title was ever given to Martin Bros. & Co., the agents of defendant, nor any request made for a transfer of the policy or the attachment of a rider in favor of the trustee, nor any indorsement made evidencing and consenting to those changes in the policy. If, prior to the loss, Tukey had given such notice or made such request to Martin Bros. & Co., and assuming, as we think the evidence shows, that consent would have been granted as a matter of course, but that before the indorsements were actually made the fire occurred, defendant would have been bound; but, as before stated, no such notice or request was ever made. The precise question, therefore, is whether or not, under the statutes, the agency of an insurance broker terminates with the issuance and delivery of the policy or whether his agency continues for all purposes while the policy is in force.

A careful analysis of these sections must be made for the purpose of determining the intent of the legislature in their enactment. It is quite evident that the purpose was to protect the insured against the fraud, mistake, misrepresentation and negligence of the person whom the insurer appoints as his agent and accepts the results or fruits of the acts of the agent by issuing the policy and accepting a premium therefor. In such cases it is no more than just and right that the insurer should be bound by the statements made to the applicant and by the knowledge of the agent of all facts and circumstances communicated by the assured to the agent, materially affecting the risk and determining and controlling the terms of the contract of insurance to be entered into as the result of the negotiations. The primary purpose is to secure to the insured the protection which he pays for. Section 44-213 refers to "Every agent or broker who shall solicit an application for

insurance of any kind;" and section 44-307 refers to any person "who shall with authority receive or receipt for any money on account of, or for any contract of insurance made by him or them * * * or who shall with authority receive or receipt for money from other persons to be transmitted * * * for a policy or policies of insurance, or any renewal thereof, * * * or who shall in any wise make or cause to be made any contract or contracts of insurance, for, or on account of such company aforesaid, shall be deemed, to all intents and purposes an 'agent' or 'agents' of such company." "When a person does any of the acts enumerated in section 1810 of the Code of Laws, the presumption is that he was the agent of the insurance company." *Madden & Co. v. Phoenix Ins. Co.*, 70 S. Car. 295, 301. Both of these sections deal solely with the procuring and issuance of the contract of insurance. There can be no doubt that in procuring the original policy to the bathing company in 1928, or theretofore, and in procuring each of the subsequent renewals thereof, including the one in suit, Tukey, Inc., though having no authority to issue policies, was the agent of the insurer, who was bound by such knowledge as Tukey had at the time of the issuance of each of the policies respectively; and in any controversy between the insured and the insurer as to the existence, terms and validity of the policy, Tukey must be considered the agent of the insurer, invested with the same powers as a regularly appointed agent. *Echols v. Mutual Life Ins. Co.*, 106 Neb. 409. But after the policy has been issued and contract completed, the statute by its terms ceases to have any application to any future relation between the agent and the insurer, at least until the agent again enters the picture by the performance of some act declared by the statute to constitute him an agent. By the expression "by its terms" we mean that there is nothing in the language of the statute which expressly or by implication indicates an intention upon the part of the legislature to extend the authority of the agent beyond the results to be accomplished by the procuring of an application and the payment

of the premium. To hold otherwise, *i.e.*, that it was the intention of the legislature to extend or continue the authority of the agent during the term of the policy, would put the insurer at the mercy of hundreds or thousands of insurance brokers, whether reliable, or what is termed the curbstone variety, or even a person not a broker who volunteers to act for the insured, without any power of selection or control over them. If such were the correct interpretation of the statutes, the business of insurance, which is now considered one of the safest kind of investments, would become so precarious that few would be found who would invest their capital in it, and no one would feel any assurance when he paid his premium that he would secure the protection promised by his contract. When an insurer appoints an agent, he selects him because of his confidence in his integrity and ability and holds him out to the public as possessing those qualities, and it is no more than just that the insurer be bound by the acts of such agent as his *alter ego* when such acts are performed within the scope of his authority; but to hold the insurer bound by the acts of a mere soliciting agent beyond the point where it has accepted or ratified the same, expressly or by implication, does violence to all our ideas of the confidential relations which exist, or are supposed to exist, between principal and agent.

With regard to the authority of a soliciting agent after issuance of the policy, it was held in *Dohlin v. Dwelling House Mutual Ins. Co.*, 122 Neb. 47, that by an agreement by such an agent to renew a policy at expiration he represented the insured and not the insurer. In *Cobel v. Hartford Fire Ins. Co.*, 154 Minn. 233, it was held: "The knowledge of an agent of an insurer after a policy has been issued that there has been a change of ownership of the property covered, such agent having no authority to consent to an assignment of the policy or to waive its terms, is not knowledge or consent of the insurer to the assignment." In *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, it was held: "While section 2765, Florida Statutes

(practically identical with section 44-307), undertakes to designate as agents of insurance companies certain persons, in fact, acting for such companies in some particulars, it does not fix the scope of their authority as between the company and third persons, and does not raise special agents with limited authority into general ones with unlimited power." See, also, *New York Life Ins. Co. v. McCreary*, 60 Fed. (2d) 355; *Newsom v. New York Life Ins. Co.*, 60 Fed. (2d) 241. That knowledge of an agent of a chattel mortgage executed upon the insured property after issuance of the policy will not be imputed to the insurer is held in *Sun Ins. Office v. Scott*, 284 U. S. 177. In that case section 9586 of the Ohio General Code was relied upon by plaintiff to charge the insurance company with knowledge of a chattel mortgage executed by assured upon the insured property after the issuance of the policy through the knowledge of the agent of that fact. The statute is substantially the same as section 44-213, and riders were attached to the policy by the local agent of the company. The court said: "On its face the statute does not go so far. We have examined the authorities cited and fail to find that they give it any such force and effect. They do not, as respondent claims, define the scope of the agency created by the statute, but leave it to be defined by applicable principles of common law. In the present cases the policy limits its scope, and we think the written contract must control." The Ohio cases cited are *Foster v. Scottish Union & Nat. Ins. Co.*, 101 Ohio St. 180, and *Hartford Fire Ins. Co. v. Glass*, 117 Ohio St. 145. The *Foster* case merely held that the insurance company was bound by the knowledge of its agent of matters existing "at the time the latter procured the insurance." The *Glass* case is to the same effect. In the case at bar the policy provides that "no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions * * * have such

power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." In *Ohio Farmers Ins. Co. v. Titus*, 82 Ohio St. 161, it was held that knowledge of even a general agent of the execution of a mortgage after the issuance of the policy would not be imputed to the insurer. In *Fredman v. Consolidated Fire & Marine Ins. Co.*, 104 Minn. 76, in construing a similar statute, it was held that it did not define the scope of the agency. The conclusion seems irresistible, both on reason and authority: (1) That the statute creates an agent for the company only when he essays to perform one of the services set forth in the statute as the basis of such agency; (2) that after the policy is issued, the authority of the agent is controlled by the contract and the principles of the common law.

On May 21, 1932, when the policy was renewed, the only knowledge which Tukey had of changed conditions was that the park company was in possession of, or rather, was operating the business of the bathing company. He had no knowledge of the terms of the arrangement between the bathing company and the park company whereby the latter held the property as security for delinquent rentals; and no doubt the insurer was bound at the time by the knowledge of Tukey, when it renewed the policy, of any change in the possession of the subject of the insurance, if there was such a change, so that it could not avoid payment for the breach of the terms of the policy as to a change of possession. But at that time there had been no change of title which under the pleadings and the evidence did not take place until September 1st or 2d after the renewal, and such change of title did not come to the knowledge of the defendant until after the loss some three or four weeks later. The mere surrender of possession by the bathing company to the park company of its property to be held and managed as security for delinquent rentals did not operate to transfer the title.

We are therefore confronted with this situation: At the time of the renewal the policy ran to the bathing company which was the owner of the subject of the insurance; on September 1st or 2d the title to the property was transferred to the park company, and Tukey was requested to secure a transfer to the latter company, but failed to notify the defendant of the change of title or to request of its agents a transfer until after the loss. What was Tukey expected to do which would constitute him an agent of the insurance company under the terms of either of the sections of the statutes referred to? He was not to make any application for insurance nor to collect any premium nor to make any contract of insurance within the terms of the statute. He was simply to procure the transfer of the policy, a contract already existent, from the bathing company to the park company. He had no authority to make the transfer himself, but the contract of insurance upon which recovery is sought contained the provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise."

This provision is contained in practically all fire insurance policies and has been held valid and enforceable. *Kirk v. Fletcher*, 123 Neb. 634; *Home Fire Ins. Co. v. Collins*, 61 Neb. 198; *Farmers & Merchants Ins. Co. v. Jensen*, 56 Neb. 284; *St. Paul Fire & Marine Ins. Co. v. Ruddy*, 299 Fed. 189; *Bassett v. Farmers & Merchants Ins. Co.*, 85 Neb. 85; *Northern Assurance Co. v. Grand View Bldg. Ass'n*, 183 U. S. 308.

The question under consideration has not been passed upon by this court. The only cases placing any construction upon the statutes quoted are those in which the original issuance of the policy was procured by the soliciting agent or the policy was actually changed through the pro-

curement of the agent. Some of these cases may be cited:

*Robinson v. Union Automobile Ins. Co.*, 112 Neb. 32. In this case the insured and soliciting agent of the insurer agreed upon the terms of the policy and that it should cover collision insurance, and it was the intention of both of them that the application and policy include such coverage, and the agent stated that the premium of $100 paid included that item. The policy, when issued, however, did not cover loss by collision, which fact was not discovered by the insured until after the loss. Upon these facts the court held that the policy should be reformed and recovery allowed.

*Davis v. Highway Motor Underwriters*, 120 Neb. 734. This case holds that when a soliciting agent and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy later issued by the company omits one of the essential elements of the contract, which omission is not discovered until after the loss, the policy should be reformed.

*Arendt v. North American Life Ins. Co.*, 107 Neb. 716. This was a case of a general agent of an insurance company who solicited and procured from the company an indorsement to be made upon a policy of insurance changing it from a "20 payment life" to a "term policy." The original policy was subject to forfeiture because the assured entered the military service contrary to its terms and without the knowledge or consent of the insurer; but the agent who procured the indorsement knew of that fact, and it was held the insurer was bound by his knowledge. The agent came within the precise terms of the statute.

*Barrett v. Northwestern Mutual Life Ins. Co.*, 124 Neb. 864. This case holds that the assistant cashier of an insurance company, to whose desk the general public come to pay premiums and receive receipts, is an agent of the company under section 44-307, and that the insurer was bound by misrepresentations made by such agent as to the conditions requisite to accomplish a waiver of the payment of premiums.

*Rubinson v. North American Accident Ins. Co.,* 124 Neb. 269. The holding in this case is: "The knowledge and information acquired by an insurance agent at the time an application for accident insurance was written was imputed to the company." See, also, *Whitehall v. Commonwealth Casualty Co.,* 125 Neb. 16; *Malm v. State Farmers Ins. Co.,* 125 Neb. 594.

In all of the above cases it will be noted that the agent was performing some of the acts mentioned in the statutes under review, the performance of which is the basis for his being declared the agent of the insurer. He was soliciting insurance, collecting premiums or making a contract of insurance. These cases are not applicable to the present situation because here the soliciting agent is not performing or requested to perform any of the acts mentioned in the statute. The claim that he was procuring a contract of insurance cannot be maintained. In the first place, there is no allegation in the petition to that effect, and if there was there is no evidence to sustain it; and, in the second place, the contract of insurance had already been made and all the agent was requested to do was to have it transferred to the plaintiff. There was no mistake in the original issuance of the policy. Notwithstanding the alleged possession by plaintiff of the subject of the insurance, policies had always been carried in the name of the bathing company as owner, and the policy in suit was renewed in the name of the bathing company May 21, 1932, and no request for a change or transfer was made until September 1, after the plaintiff acquired title. No doubt, as above suggested, if Tukey had requested the transfer and the same had been made, or if, after the request had been made, the agents of the insurance company authorized to make the transfer negligently failed to do so until after the loss, Tukey, Inc., under the statute, would be considered the agent of the insurer to all intents and purposes, and his knowledge of the prior transfer of the title, whereby the policy may have been rendered void, would be imputed to the insurer (*Kor v. American Eagle*

*Fire Ins. Co.*, 104 Neb. 610) ; but, in the absence of any notice to the insurer or the acceptance by it of the acts of Tukey, we are unable to perceive how it can be held that, under the statute, Tukey became the agent of the insurer, so as to accomplish a waiver of the forfeiture of the policy, which by its terms prohibited a change or waiver by an agent except by indorsement in writing upon the policy.

Plaintiff contends that under section 44-322, Comp. St. 1929, which provides that a breach of a condition of a contract or policy of insurance will not void the contract or permit the insurer to evade liability unless such breach existed at the time of the loss and contributed to the loss, the insurer is liable, even though there has been a change in the title. It is not shown by the evidence that the hazard was increased by the transfer, but this statute has been construed against this contention by this court in *Stephenson v. Germania Fire Ins. Co.*, 100 Neb. 456, and also in *St. Paul Fire & Marine Ins. Co. v. Ruddy*, 299 Fed. 189. In this latter case, where the insured had conveyed title to the premises, the court said: "We do not see how this section is in any way applicable to this situation. In *Stephenson v. Germania Fire Ins. Co.*, 100 Neb. 456, it is held by the court that this statute could not apply in the absence of contract relationship between plaintiff and defendant, and such relationship we have held does not exist here." The plaintiff in this case is not a party to the insurance contract, nor has any indorsement been made upon the policy transferring to it the interest of the bathing company. It is quite possible that, in an action brought by the bathing company upon the policy, section 44-322 would be applicable, and the mere transfer of title, not contributing to the loss, would not void the policy. But, there being no contractual relation between the plaintiff and the insurer, we hold that this statute has no application. See *Mayfield v. North River Ins. Co.*, 122 Neb. 63; *Stephenson v. Germania Fire Ins. Co., supra.*

Regarding the second cause of action, the plaintiff is not entitled to recover thereon, for the reason that at the time

of the assignment of the policy the bathing company did not have any insurable interest in the property insured. *Stephenson v. Germania Fire Ins. Co., supra.* Further, the policy was void by reason of the change of title without the knowledge or consent of the insurance company. *Connolly v. Providence Washington Ins. Co.,* 126 Neb. 303.

We think that the finding of the learned district court that the policy in suit was procured under an agreement with plaintiff to procure its assignment to the said plaintiff whenever the transfer of said property to plaintiff should be formally completed is not warranted by the pleadings nor sustained by the evidence; and that Tukey, Inc., was the agent of the plaintiff, and not of the insurance company, in agreeing to procure a transfer of the policy, and that the transfer by the bathing company after the loss to the plaintiff vested the latter with no right of action on the policy. The decree of the district court is reversed and action dismissed.

REVERSED AND DISMISSED.