ETHEL MOGIL, APPELLEE, v. MARYLAND CASUALTY COMPANY, A CORPORATION, APPELLANT.

26 N. W. 2d 126

FILED FEBRUARY 14, 1947. No. 32148.

*Brown, Crossman, West, Barton & Fitch,* for appellant.
*Wear, Boland & Nye,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover upon a burglary insurance policy. Upon trial to the court, a decree was entered finding generally in favor of plaintiff and against defendant, and awarding plaintiff a judgment for $1,204.92, the amount of the loss, plus $69.29 interest accrued thereon at 6 percent, together with $125 attorneys' fees and costs. Motion for new trial was overruled, and defendant appealed to this court, assigning as error substantially: (1) That since the decree did not make special findings of fact awarding plaintiff the right of reformation, the amount of the judgment was erroneous because contrary to the provisions of the policy contract; (2) that the evidence was insufficient to support the judgment; and (3) that the judgment was contrary to law. We find that defendant's assignments cannot be sustained.

Plaintiff's petition alleged in substance that defendant sold and delivered to plaintiff a policy of insurance to indemnify her for all loss of merchandise, furniture, fixtures, and equipment occasioned by burglary; that on May 15, 1945, while the policy was in full force and effect, a burglary was committed by persons unknown, chopping a hole in the roof and stealing merchandise of the value of $1,204.92; and that, although plaintiff has performed all requirements of the policy and made demand for payment, defendant has refused to pay the loss. Plaintiff prayed judgment against

defendant for $1,204.92, with interest at 6 percent from May 15, 1945, reasonable attorneys' fees, and costs.

Defendant's answer admitted sale and delivery of the policy, but denied generally, and affirmatively alleged in substance that plaintiff did not keep records sufficiently accurate to determine her loss, and that by virtue of the provisions of the policy, plaintiff was required to carry an additional amount of insurance above $2,000, up to $5,000, on her stock of merchandise, and in failing to do so, she became a coinsurer, thereby limiting defendant's liability to two-fifths of the alleged loss, or $481.96.

For reply plaintiff alleged in substance that prior to January 4, 1945, the effective date of the policy, the agent of defendant called upon her and solicited the purchase of a burglary policy upon her stock of merchandise and represented and agreed with plaintiff orally that her stock of merchandise would be insured up to the amount of $2,000 by payment of an annual premium of $90; and that at the time of the delivery of the policy, defendant's agent collected the premium and orally represented and agreed with plaintiff that by virtue of its provisions, in the event any merchandise up to the amount of $2,000 was stolen, defendant would reimburse plaintiff in full for such loss up to said amount. Plaintiff prayed that the policy be reformed to give effect to the representations and agreements of the agent of the defendant, so as to include any loss which plaintiff might have sustained by reason of a burglary, up to $2,000, and for judgment as prayed in her petition.

Thereafter the cause was transferred to the equity court in conformity with a motion filed by defendant, for the reason that plaintiff's reply sought reformation of the policy.

Section 25-1127, R. S. 1943, provides: "Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, * * *." Admittedly no such request was made in the case at

bar, and in the absence thereof, the decree, finding generally for plaintiff with entry of judgment as heretofore recited, was in full compliance with the statute. See Lancaster County v. Fitzgerald, 86 Neb. 676, 126 N. W. 141. In other words, the decree was correct as to form, whether the trial court intended to award reformation or otherwise.

It is not argued here by defendant that plaintiff did not keep records sufficiently accurate to determine her loss or that plaintiff did not suffer the loss bona fide and in the manner and amount claimed by her. In any event, undisputed evidence conclusively established the affirmative of that inquiry. Therefore, the only question is whether under the terms and conditions of the insurance contract made by the parties, plaintiff would be entitled to recover the loss in full as determined by the trial court, or only two-fifths thereof, as claimed by defendant.

Decision of that question depends upon the facts and applicable law. In that connection, the record discloses without dispute that while Charles Mogil, plaintiff's husband, was serving in the United States Navy during the war, plaintiff operated a retail liquor establishment, known as Charley's Blue Room, in Omaha. Having a sizable stock of merchandise on the premises, she desired to procure a policy of burglary insurance thereon in the amount of $4,000 or $5,000. Prior to January 4, 1945, she discussed the matter with the insurance agent, who presented a request therefor to defendant company. It later notified the agent that they would take $2,000 of it, at a premium of $45 per thousand per annum, but did not care to take any more. The agent informed plaintiff that he could get her a policy that would cover her stock of merchandise up to a $2,000 loss, and she told him to take it. No written application ever was requested or executed, but the agent told defendant to write up a $2,000 coverage policy.

The agent procured the policy from defendant, believing it provided that plaintiff would be paid whatever loss she sustained up to $2,000, and believing that the policy did not

contain any coinsurance provision. He took the policy to plaintiff's place of business, read a portion of it, and explained to her that the policy provided for $2,000 burglary coverage on her liquor stock, that she would be paid $2,000 in the event that she had such a loss, and that she would be paid whatever loss she sustained up to $2,000. She replied that she would take the policy, because if anybody should break into her place of business all they could put in a truck would be $2,000 worth anyway. She then asked the agent: "* * * this will cover that, won't it?" to which the agent replied: "Yes, this will cover a $2,000 loss." He then delivered and she accepted the policy, paying the agent the $90 annual premium. After the loss, and until suit was brought, defendant refused payment thereof, because it claimed plaintiff did not keep records sufficiently accurate to determine her loss. After suit was filed, they made the same claim, but for the first time also claimed liability for only two-fifths of the loss in any event.

It is true that "In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory and if there is a failure to overcome this presumtion by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties." Beideck v. National Fire Ins. Co., 139 Neb. 171, 296 N. W. 873.

However, the evidence in the case at bar with regard to the terms and conditions of the insurance contract purchased by plaintiff is not doubtful or unsatisfactory, but entirely plain and convincing beyond reasonable controversy. As a matter of fact, the evidence of plaintiff and the insurance agent, who testified for plaintiff with reference thereto, is undisputed, and it must be remembered that the statements and representations made by the agent to plaintiff were the statements and representations of de-

fendant, because under ·the circumstances of this case, he was its agent.

This court has held under sections 44-328 and 44-329, R. S. 1943, that: "* * * one who solicits an application for insurance of any kind, or who, with authority, receives or receipts for any money on account of or for any contract of insurance made by him, although the policy may not be signed by him, shall be deemed, to all intents and purposes, the agent of the insurance company." Robinson v. Union Automobile Ins. Co., 112 Neb. 32, 198 N. W. 166.

The intent of the Legislature in the enactment of the above sections is discussed in Krug Park Amusement Co. v. New York Underwriters Ins. Co., 129 Neb. 239, 261 N. W. 364. In that opinion it was said: "It is quite evident that the purpose was to protect the insured against the fraud, mistake, misrepresentation and negligence of the person whom the insurer appoints as his agent and accepts the results or fruits of the acts of the agent by issuing the policy and accepting a premium therefor. In such cases it is no more than just and right that the insurer should be bound by the statements made to the applicant and by the knowledge of the agent of all facts and circumstances communicated by the assured to the agent, materially affecting the risk and determining and controlling the terms of the contract of insurance to be entered into as the result of the negotiations. The primary purpose is to secure to the insured the protection which he pays for."

This court has also held in cases similar to the one at bar that "When a soliciting agent of an insurance company and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy, later issued by the company, omits one of the essential elements of the contract, which is not discovered by the insured until after a loss occurs, he may then have the policy reformed so as to express the real agreement of the parties, and his failure to promptly examine the policy when received and discover the departure therein from the real agreement will not defeat his right to have reformation of the policy."

Robinson v. Union Automobile Ins. Co., *supra*; and quoted with approval in Davis v. Highway Motor Underwriters, 120, Neb. 734, 235 N. W. 325.

Other propositions of the law are discussed in briefs of counsel but since the above cited cases are directly in point and control decision, we do not deem it necessary to discuss them in this opinion.

For the reasons heretofore stated, the judgment of the trial court is affirmed, and plaintiff is awarded $200 attorneys' fees for services in this court.

AFFIRMED.