DU TEAU COMPANY, INC., DOING BUSINESS AS HOWARD BURNETT CO., APPELLEE, v. NEW HAMPSHIRE FIRE INSURANCE COMPANY, A CORPORATION, APPELLANT.

57 N. W. 2d 663

Filed March 20, 1953. No. 33241.

*Chambers, Holland & Groth,* for appellant.

*L. R. Doyle* and *R. A. Vestecka,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Du Teau Company, Inc., doing business as Howard Burnett Co., brought this action against defendant, New Hampshire Fire Insurance Company, to reform an automobile dealer's open insurance policy issued January 3, 1949, and thus permit recovery for damages sustained when plaintiff voluntarily parted with possession of a 1947 Packard automobile on March 4, 1949, because induced to do so by a scheme, device, or fraud. Concededly, the policy involved was the third annual duplicate renewal of an original standard form which excluded any liability in such a situation.

In that connection, however, plaintiff substantially alleged in its amended petition that at the time the original policy was purchased on January 3, 1946, and at the time of renewals thereof as well, defendant's agent represented and it was mutually agreed that plaintiff would be thereby protected against any loss that occurred from larceny, robbery, or pilferage, including that resulting from loss of possession as aforesaid. It was alleged that plaintiff, relying upon such representations and agreement, purchased the policy but through inadvertence, accident, or mutual mistake, as distinguished from fraud, the terms of the policy omitted

protection against such a loss, which omission plaintiff did not discover until after the loss occurred.

Defendant's answer denied generally, but admitted issuance of the policy January 3, 1949, and alleged that on March 4, 1949, plaintiff voluntarily parted with possession of the automobile as it was induced to do by a "fraudulent scheme, trick, device or false pretense," liability for which was excluded by provisions of the policy set forth in its answer. The issues were tried as if plaintiff's reply was a general denial.

After hearing by the trial court, whereat evidence was adduced, a judgment was rendered reforming the policy to cover the loss and awarding plaintiff $1,469.13, plus $150 attorney's fees, interest, and costs. Defendant's motion for new trial was overruled, and it appealed, assigning that the judgment was contrary to the evidence and law. We sustain the assignment.

At the outset it should be noted, as disclosed by the record, that on March 5, 1949, plaintiff reported to the insurance company that the automobile had been stolen, and on March 26, 1949, plaintiff filed its original petition in the district court solely alleging theft of the same automobile on March 4, 1949, and attached thereto a copy of the same policy in order to support its alleged right to recover $2,595, the actual cash value of the automobile, upon a theory of theft for which the company was allegedly liable under the provisions of the policy as issued.

On April 25, 1949, defendant answered such original petition, alleging that plaintiff had voluntarily parted with possession of the automobile as induced to do by a "fraudulent scheme, trick, device or false pretense," liability for which was excluded by the policy.

It was thereafter, on June 4, 1949, that plaintiff filed its amended petition first alleging that its loss occurred in the manner claimed by defendant, but asserting its right to reformation of the policy and recovery of the loss. In that regard, no contention is made by defendant

that plaintiff's change of position is controlling, but only that it is a significant circumstance which this court should consider in arriving at its ultimate conclusion.

That there was a loss in the manner claimed, and the amount thereof, is not in controversy here. The question presented for trial de novo is simply plaintiff's right to reformation.

In that connection, it is true, as claimed by plaintiff, that: "When a soliciting agent of an insurance company and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy, later issued by the company, omits one of the essential elements of the contract, which is not discovered by the insured until after a loss occurs, he may then have the policy reformed so as to express the real agreement of the parties, and his failure to promptly examine the policy when received and discover the departure therein from the real agreement will not defeat his right to have reformation of the policy." Mogil v. Maryland Casualty Co., 147 Neb. 1087, 26 N. W. 2d 126. See, also, Robinson v. Union Automobile Ins. Co., 112 Neb. 32, 198 N. W. 166. However, it is also true, as stated in Mogil v. Maryland Casualty Co., *supra,* quoting from Beideck v. National Fire Ins. Co., 139 Neb. 171, 296 N. W. 873: "It is true that 'In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory and if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties.' "

Beideck v. National Fire Ins. Co., *supra,* cited numerous cases supporting such rule and also held that: "Where the evidence, in an action for reformation of a written instrument, is sharply and irreconcilably con-

flicting, it becomes necessary to apply the well-known rule of equity that the evidence must be clear, convincing and satisfactory, and, in consequence, deny a reformation." Also, in Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N. W. 2d 81, it was held: "A preponderance of evidence sufficient to justify reformation of a contract in writing on the ground of mutual mistake requires proof that is clear, convincing and satisfactory, and must establish that the mutual mistake involved is common to both parties, each laboring under the same misconception." See, also, Kear v. Hausmann, 152 Neb. 512, 41 N. W. 2d 850, wherein it was held: "In a proceeding to reform a contract on the ground of mutual mistake the burden of proof is on the party interposing that plea.

"A preponderance of evidence sufficient to justify reformation of a written instrument requires proof that is clear, convincing, and satisfactory.

"A mistake for which a written instrument will be reformed must be mutual.

"A mutual mistake is one common to both parties, each laboring under the same misconception."

Also, in Lovenburg v. Justice, 155 Neb. 406, 51 N. W. 2d 895, it was held: "In order to warrant the reformation of a written instrument in any material respect, the evidence must be clear, convincing, and satisfactory, and until overcome by such proof, the terms of the instrument must stand as evidencing the intention of the parties.

"Reformation of an instrument to correct a mistake will not be accorded unless the intent and agreement which it will express as reformed were concurrent in the minds of the parties to and including the time of its execution." Such rules are controlling here. Cases relied upon by plaintiff are entirely distinguishable upon the facts. To discuss them at length herein would unduly prolong this opinion.

Bearing in mind the foregoing rules, we have ex-

amined the record. It discloses that at the trial on the merits plaintiff offered the testimony of only one witness who managed and operated the Packard establishment and purchased the policy for plaintiff. On the other hand, defendant offered the deposition testimony of only one witness, the agent who sold the policy.

Plaintiff's witness testified in substance that he did not read the policy originally purchased or the three other identical renewals thereof, but that the agent for defendant company handled all of his insurance business and in several conversations with reference thereto prior to the purchase and effective date thereof defendant's agent had represented and assured him that the policy included complete coverage for any loss that might occur, particularly the type here involved. On the other hand, defendant's agent, who at time of trial had entered other employment, testified in substance that no such representations or assurances were ever made by him but that plaintiff's manager, having been in the automobile business for some time, was conversant with, knew what the contract was, and the agent was rather sure that such manager asked for the particular policy issued, which was a standard form containing the kind of coverage for which plaintiff applied. The record discloses, and in fact plaintiff's witness conceded on direct rebuttal, that his testimony and that of defendant's witness was in conflict. As we view it, the evidence is sharply and irreconcilably conflicting.

In Beideck v. National Fire Ins. Co., *supra*, there was also an irreconcilable conflict in the evidence. In that opinion it is said: "Was this evidence in the light of the established rule of law sufficient to warrant a reformation of the policy in question? We think not. To be sufficient the proofs must not have been doubtful; they must have been satisfactory; they must have been of sufficient weight to overcome the presumption that the policy correctly expressed the intention of the parties;

they must have been so plain and convincing as to re-move any reasonable controversy. From a reading of all the evidence and giving to it either its face value, or an analysis which takes into consideration implications and probabilities, we cannot say that the plaintiff's proofs are plain and convincing beyond reasonable controversy." Such statement has application and is controlling here.

For reasons heretofore stated, we conclude that the judgment should be and hereby is reversed and the cause is remanded with directions to render a judgment for defendant at plaintiff's costs.

REVERSED AND REMANDED WITH DIRECTIONS.