JAMES M. SEYMOUR, JR.,

*v.*

GERMAN-AMERICAN INSURANCE COMPANY.

[Decided April 25th, 1914.]

Plaintiff had insured premises used as a dwelling-house. Thereafter the premises· were altered to be used for manufacturing oil stones, the insurance policy changed accordingly, and the premium increased. At the expiration of the policy the company sent the plaintiff a new policy in-

suring the same premises for which it charged the increased premium. Upon this new policy had been stamped a warranty that the building was occupied exclusively for dwellings, but the clause was very much blurred and almost unreadable. The complainant failed to notice the stamped words and paid the premium, and was not advised of the provisions of the clause until after a fire. The agent who stamped the clause upon the policy was not called to explain his action.—*Held,* that the case was one of mutual mistake and that the policy should be reformed by striking the stamped words therefrom.

*Mr. Thomas L. Raymond,* for the complainant.

*Mr. Murray* (of New York), for the defendant.

STEVENS, V. C.

The complainant asks that the contract of insurance appended to his bill be reformed by striking from its face the words, stamped with a hand stamp, "Warranted by the assured that the within described building is occupied exclusively for dwellings above the first or grade floor."

The premises had been a dwelling-house, and had, in 1909, been so altered that they might be used to manufacture oil stones. Thus changed they had, in March, 1909, been insured for $2,-000 for one year, "while occupied as a dwelling and for manufacturing of oil stones." The dwelling-house rate of $8.40, theretofore charged, was changed to the factory rate of $20.25. When this policy was about to expire the company's agent sent to the complainant's agent a new policy, in which the property was described, as it had been in the former policy and the same increased premium was charged. On this new policy was stamped the above warranty, but very much blurred and almost, if not quite, unreadable. The defendant's agent transmitted the policy to complainant, who, failing to notice the stamped words, paid the premium and placed the paper in his safe, supposing it to conform in all respects to the one that had preceded it. The agent, who stamped the words, was not called to explain their presence on the paper. The complainant did not know of them until the company refused to pay after the occurrence of a fire. As far as appears, therefore, the company, without any actual request by complainant to renew, and without giving any notice of

the change, sent to complainant's agent, in the ordinary course of business, a new policy, on which it charged and took the increased premium and which was, if its present contention be sound, void *ab initio,* to its knowledge. I say "to its knowledge" for it had, the year before, been informed of the alteration in the building and in its use and had increased the premium accordingly. It had, in the meantime, received no further information, and it had no reason to suppose that there had been a change. The facts appear to me to show mutual mistake—mistake by the company's agent in stamping the objectionable matter on the printed policy—and mistake by the complainant, who supposed that the policy was like the one which had immediately preceded it and who was guilty of no more carelessness than was Lloyd when he took his deed from Hulick under the supposition that it conformed to the prior written contract. *Lloyd* v. *Hulick, 69 N. J. Eq. 784.* The following cases are in point: *Hill* v. *Millville Insurance Co., 39 N. J. Eq. 66; Thomason* v. *Capital Insurance Co., 61 N. W. Rep. 843; Fitchner* v. *Fidelity Association, 68 N. W. Rep. 710; Providence Washington Insurance Co.* v. *Brummelkamp, 58 Fed. Rep. 918; Pictet Spring Water Ice Co.* v. *Citizens Insurance Co., 71 S. W. Rep. 514.*