29 N.J. Super. 242 (1954)
102 A.2d 385
MARTHA H. HEAKE, EXECUTRIX UNDER WILL OF JOHN H. HEAKE, JR., DECEASED, PLAINTIFF-RESPONDENT,
v.
ATLANTIC CASUALTY INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. EDWARD GARGANO, AN INFANT, BY HIS FATHER AND GUARDIAN AD LITEM, MICHAEL GARGANO, PLAINTIFFS-RESPONDENTS,
v.
AUTOMOBILE ASSOCIATION OF NEW JERSEY, A NEW JERSEY CORPORATION, AND ATLANTIC CASUALTY INSURANCE COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1953.
Decided January 14, 1954.
*245 Before Judges EASTWOOD, JAYNE and FRANCIS.
*246 Mr. Joseph C. Haines argued the cause for plaintiff-respondent Martha H. Heake, executrix, etc.
Mr. James Hunter, III argued the cause for plaintiff-respondent Edward Gargano, an infant, etc. (Messrs. Boyle, Archer & Greiner, attorneys).
Mr. Harry Green argued the cause for defendants-appellants.
The opinion of the court was delivered by FRANCIS, J.A.D.
The primary question for determination on this appeal is whether or not, under the circumstances presented, failure of the assured to read his policy of automobile liability insurance and thus to discover certain alleged limitations on the coverage provided, relieves the carrier of liability thereunder.
The record discloses that on January 14, 1952 the infant, Edward Gargano, then age 17 years, while driving his Ford convertible automobile, became involved in a collision with another car operated by one Cohen. As a result, John H. Heake, Jr., was killed and his executrix sued Gargano and the other driver. The trial resulted in a verdict of $15,000 against both drivers. $5,000 was paid thereon by Cohen, leaving a balance of $10,000 for which recovery is sought in this action.
It appears that on April 2, 1951 Gargano, who was 17 years of age obtained his first driver's license; it was stamped "Initial." Thereafter, in June 1951, he purchased the Ford. Apparently, after some conversation with his father on the subject, he undertook to obtain insurance coverage for it.
The exact circumstances leading up to the visit of defendant's agent to the Gargano home for the purpose of writing the insurance do not appear, except in the affidavits submitted on the motion for summary judgment. It is plain, however, that George D. Preiksat, defendant carrier's agent for the purpose of soliciting insurance and obtaining written *247 applications therefor, was a stranger to the Garganos prior to his appearance in their home in early July 1951.
The testimony as to what took place at this meeting is uncontradicted and undisputed. Defendants did not call Preiksat as a witness at the trial.
In any event, Preiksat announced that the purpose of his mission was to write insurance on the car. He made inquiries as to the make, type and age of the vehicle, whether it was encumbered, the amount of coverage desired, and as to a number of other matters which he deemed relevant. Among other things, he inquired as to Gargano's age and the length of time he had been driving. In answer, the young man said his age was 17 years and that he had been driving since March. In addition, he produced his driver's license, which bore the notation "Initial," and his registration certificate and handed them to Preiksat.
During the questioning Preiksat was seated with a large pad on his knee on which he made notes as the oral and documentary information was given to him. Then he produced a blank application and requested Gargano to sign at an indicated place. This was done and the agent left after telling the young man in the presence of some members of his family not to worry, that he was covered.
A short time thereafter, the automobile liability insurance contract of the appellant, Atlantic Casualty Insurance Company, and the service contract of the appellant, Automobile Association of New Jersey, arrived in the mail. Gargano's mother received them. She handed them to her son that evening on his return from work. He just looked at the first page, which contains the declarations, then returned them to her and she put them in the safe, where they remained until after the accident.
It should be noted at this point that the declarations accurately reflect the agreement of the parties with respect to the coverage, namely, "Bodily Injury Liability: $10,000 each person, $20,000 each accident; property damage liability: $5,000 each accident; and medical payments: $500 each person." Also, they set forth truly Gargano's name, *248 address, occupation, employer, a description of the car, the fact that it was financed, that no insurer had cancelled or declined to write any automobile insurance during the previous year and that neither his operator's license nor registration had been revoked or suspended.
Under the policy, the insurer agreed with Gargano, the "insured named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of the policy * * * to pay" on his behalf "all sums which" he "shall become legally obligated to pay as damages because of bodily injury * * * including death, at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."
The last paragraph provides:
"25. Declarations: By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."
The service contract issued by appellant Automobile Association for a separate premium, contains an agreement to furnish certain services to Gargano in connection with accidents and other difficulties arising out of the operation of the car by him or by others with his consent, such as "emergency repair and towing service, law suit defense, motor vehicle and traffic violation defense and bail bond service." This agreement contains no reference to any application for insurance or to any representations made in applying therefor.
When the accident occurred out of which the judgment arose, Gargano reported it to the insurer. Shortly thereafter, he was notified that the company disclaimed liability because, in the application for the insurance, he had stated he was "23 years of age and that no driver licensed less *249 than one year would operate said motor vehicle." The disclaimer letter said further:
"Relying on said application, we issued policy of insurance #CAP 608644 in the Atlantic Casualty Insurance Company and membership certificate #483875 in Automobile Association of New Jersey for the period from July 5, 1951 to July 5, 1952.
As a result of an accident which occurred on January 14, 1952, we made an investigation which disclosed that you were not 23 years of age as represented but were only 17 and, furthermore, that you had not been driving a vehicle for a year or more at the time you applied to us, but had been operating a vehicle for approximately three months.
Policy of insurance and membership were issued relying on the truth of the representations made by you. Had we known the true facts, we would not have issued policy of insurance and membership without a full and complete investigation.
In view of the fact that said representations were not true, we are cancelling said policy of insurance and membership contract as of date of inception and enclose check of Automobile Association in the sum of $50 representing entire amount paid by you."
At a later date, when the damage action was instituted, the company provided a defense without cost to Gargano, but under an agreement that such conduct would not be deemed a waiver of the disclaimer of liability.
Subsequent to the trial of the damage action, Gargano and the judgment creditor instituted these actions, the creditor on the policy and Gargano on both the policy and the service contract. The suits made claims of breach of contract and estoppel to deny liability, and each one sought reformation. The answers and pretrial order asserted absence of liability: (1) because of alleged false representations with respect to age and the length of time Gargano held a driver's license when he applied for the insurance, and (2) because of two endorsements which were attached to the policy. The latter provided:
"Limitation of use  named drivers.

* * * * * * * *
It is agreed that such insurance as is afforded by the policy does not apply when said automobile is being driven by a person under the age of twenty-five (25) except
1. Edward Gargano Age 23

* * * * * * * *
*250 Limitation of Use.
This endorsement effective July 5, 1951, 7:00 PM forms part of Policy No. 608644 issued to Edward Gargano by Atlantic Casualty Insurance Company and terminates with the policy.
It is agreed that such insurance as is afforded by the policy does not apply whenever automobile described in the policy is operated by any person licensed to operate an automobile for less than one year.
Newly licensed drivers may be added on with the written permission of the insurance company.
This endorsement does not apply in the event of an urgent emergency.
Nothing herein contained shall be held to waive, alter, vary or extend any of the declarations, agreements, exclusions or conditions of this policy, except as stated herein."
At the trial in the Law Division, the facts outlined above as to the events and conversations which took place at the Gargano home when the insurance was applied for, were established without contradiction. The completed application, which had been blank when signed, was received in evidence. We note that this application was not attached to or made part of the policy, or in anywise referred to therein. Nor is it suggested that the insured ever saw it in completed form until after the disclaimer of liability by the insurance company. The application contains the following questions and ink-written answers, which were presumably filled in by Preiksat:
"Is car used for business, except going to and from place of employment?
None.

* * * * * * * *
How many drivers?
Owner.

* * * * * * * *
If any driver licensed less than one year state name and length of time driving?
None.

* * * * * * * *
Has applicant or any driver been convicted of a crime?
None."
The insurer claims also that Gargano's age appears therein as 23 years. In this connection, the form of the application *251 is rather unusual, as the result of which it is not clear that the age reference relates to the insured. At the bottom of one page, this appears:
 "Eastern Accept. Phila.
 ___________________________________
 Finance Co. and Address.
 "23 Mary Mother
 ___________________________________
 Age Beneficiary Relationship
 "
 ___________________________________
 Age Beneficiary Relationship"
The insurer contended in the trial court that even though the false answers as to age and the length of time Gargano had held a driver's license were inserted by its agent following the receipt of truthful and accurate information, such answers are binding on him because he signed the application in blank. Therefore, it argued that the policy was voidable for fraud. It maintained also that the limitation of use endorsement excepting Gargano from the exclusion of drivers under 25 years of age would not have been added but for the representation that his age was 23 years. And it asserted that in any event, by the second limitation of use endorsement Gargano was excluded from the coverage provided by the contract because he had not been a licensed operator for a year or more at the time of the accident. Finally, it was urged that Gargano's failure to read the policy after delivery to him and to discover the erroneous statement of his age as well as the exclusion from coverage of drivers holding licenses for less than one year, operates to bind him to its terms.
The trial court found that the false answers had been inserted by the company's agent, that Gargano acted in good faith and was innocent of any fraud, that the insurer was responsible for the fraud of the agent and that under the circumstances the infant assured was not barred from recovery by his failure to read the policy and discover the error in the age, and the limitation of use endorsements. Accordingly, *252 the policy was reformed by deleting therefrom the limitation of use endorsements, and individual judgments were entered for Gargano and the judgment creditor in the amount of $10,000, with the proviso that one payment in that amount would constitute satisfaction. A second judgment in the amount of $260 was granted to Gargano for breach of the service contract based upon the failure to defend criminal proceedings against him which followed the collision.
This appeal presents for consideration the same contentions as were made in the trial court.
The record discloses that at the time of issuance of the policy of insurance, Preiksat had been in the employ of appellant Automobile Association for about three years and that he worked out of its Glassboro, N.J., office as an agent and solicitor for this type of coverage. It appears also that the Association was the exclusive general agent for the Atlantic Casualty Company in the writing of insurance, that Atlantic owns the great majority of the Association's stock and that both companies have the same president and secretary, whose facsimile signatures appear on both the policy and the service contract. Likewise, the Association, as such exclusive general agent, had authority to issue and did issue directly the insurance contract involved here.
At the outset of our study of the problems presented, it is necessary to consider the effect of the insurer's agent's act in inserting the inaccurate answers in the application after he had been given truthful and correct information by the insured.
The general rule on the subject is set forth in 29 Am. Jur. Insurance, § 808, as follows:
"The general rule of agency that the principal is chargeable with, and is bound by, the knowledge of or notice to his agent received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends, is fully applicable to agents of insurance companies. The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope *253 of his authority, is chargeable to the insurer. Where such knowledge of an insurance agent relates to a material misrepresentation or breach of warranty or condition which would otherwise render the policy unenforceable at its inception, the insurer issuing the policy will not be permitted to take advantage of such breach, or cause of forfeiture."
The principle is applicable where the agent is a soliciting agent while performing his duties in receiving applications. Ibid., § 826.
Further:
"According to the great weight of authority, if an agent of the insurer, after obtaining from an applicant for insurance a correct and truthful answer to interrogatories contained in the application for insurance, without knowledge of the applicant fills in false answers, either fraudulently or otherwise, the insurer cannot assert the falsity of such answers as a defense to liability on the policy, and this is true generally without regard to the subject matter of the answers or the nature of the agent's duties or limitations on his authority, at least if not brought to the attention of the applicant." (§ 843)
The discussion in American Jurisprudence indicates also that by the great weight of authority where an agent with true knowledge fills in false answers, without knowledge or collusion by the insured, the insurer is estopped from relying on the falsity of the answers to defeat the policy and regardless of clauses limiting the agent's authority in the policy. (§ 846) See also: Annotation, 148 A.L.R. 508; Restatement of the Law of Agency, § 268; 17 Appleman, Insurance Law and Practice, §§ 9401, 9402, 9407, 9415; 9532; 9535; 9565; 9695; 9716; 9720. Cf. Parrette v. Citizens Cas. Co., 128 N.J. Eq. 206 (E. & A. 1940); Driscoll v. Burlington-Bristol Bridge Co., 10 N.J. Super. 545, 578 (Ch. Div. 1950), modified on other grounds, 8 N.J. 433 (1952); Camden Securities Co. v. Azoff, 112 N.J. Eq. 270, 277 (E. & A. 1932); American Surety Co. v. Conway, 88 N.J. Eq. 370, 375 (E. & A. 1917); Combs v. Shrewsbury Mutual Fire Ins. Co., 34 N.J. Eq. 403, 409 (Ch. 1881); Schenck v. Mercer County Mutual Fire Ins. Co., *254 24 N.J.L. 447, 453 (Sup. Ct. 1854); Metropolitan Cas. Co. v. Friedley, 79 F. Supp. 978 (N.D. Iowa 1948); Commonwealth Cas. Co. v. Arrigo, 160 Md. 595, 154 A. 136, 77 A.L.R. 1250 (1931).
Extended discussion of the applicability of these general principles to the present issue is not necessary. It seems sufficient to say that under the circumstances disclosed, they operate to bar reliance by the insurer upon the untrue answers appearing in the application. The justice of the estoppel in our judgment is emphasized here because it so plainly appears that the young man in question relied upon the representations and superior knowledge of the agent in signing the application in blank and because the completed application was never called to his attention until after the accident; nor made part of the policy nor referred to therein.
However, appellant urges that even if it is precluded from taking advantage of the partial falsity of the application, no liability exists because, if the insured had read the policy as he was obliged to do, he would have discovered that the two limitation of use endorsements exclude him from its coverage. Therefore, it is claimed such failure estops him from reliance upon the mistake or fraud of the agent in his pursuit of legal or equitable relief. In support of the proposition, reference is made to Crescent Ring Co. v. Travelers' Ind. Co., 102 N.J.L. 85 (E. & A. 1926); Sardo v. Fidelity etc. Co. of Maryland, 100 N.J. Eq. 332 (E. & A. 1926); Berkowitz v. Westchester Fire Ins. Co., 106 N.J. Eq. 238 (E. & A. 1930); By-Fi Building & Loan Ass'n v. New York Cas Co., 116 N.J. Eq. 265 (Ch. 1934); Pacific Mutual Life Ins. Co. v. Rosenthal, 122 N.J. Eq. 155 (Ch. 1937); Mesce v. Automobile Ass'n of N.J., 8 N.J. Super. 130 (App. Div. 1950).
There is no doubt that under these cases it is the law of New Jersey that an insured is charged with knowledge of the contents of his policy and will be dealt with as though he had read it. But what is the exact nature of the burden imposed by this doctrine? To be just, it must mean that *255 such knowledge is imputed to a policy holder as would come to a reasonably intelligent person from a reading of his contract. Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n, 305 N.Y. 243, 112 N.E.2d 273 (Ct. App. 1953). If the language used would not make such a person clearly aware that it did not conform with the agreement for coverage made between him and the agent or that certain exclusions deprived him of protection contrary to that agreement, then he should not be barred from relief by way of reformation. And the courts, in approaching the decision as to whether or not such a clear awareness would flow from the reading, should consider the conversations between the agent and the applicant, the representations made by the agent as to coverage, the superior knowledge of the agent on the subject, if it be the fact, the acts and conduct of the agent and his fraud or mistakes, if any, adversely affecting the insured, and the agreement which was reached between them as to the coverage to be provided.
None of the New Jersey cases cited by the parties discusses the effect of lack of clarity in the policy, in the face of all the circumstances and conditions, upon a projected estoppel of the insured. However, an illustrative and frequently quoted case is Hould v. Maryland Cas. Co., 83 N.H. 474, 144 A. 261, 262 (Sup. Ct. 1929). There the issue in a reformation action was whether the policy covered two buildings or only one. The insured claimed that he and the agent agreed that both were to be included; the agent maintained that only one was to be covered; and the street number of one building only appeared in the policy. The company contended that examination thereof would have disclosed the lack of coverage and consequently Hould was bound by its limitations.
The opinion of Chief Justice Peaslee indicates that the rule which binds the insured to the terms of the policy does not apply in reformation cases in New Hampshire. Although, when stated that broadly, the case may be considered as opposed to the New Jersey rule, the following language as to the duty to read is significant:
*256 "One reason assigned for the finding that the plaintiff was not negligent is that if he had read the policy it would not have informed him of the error therein. The policy, when applied to the physical situation of the property, was somewhat conflicting. While it gave but one street number, it specified a street frontage covering that of both buildings. This provision, read by the insured in the light of the facts that the parties had agreed orally for insurance of both buildings and that the defendant's agent then measured the whole frontage in the presence of the plaintiff, might well mean, to him, that the policy was inclusive."
The trial court had found on the facts that the agent and the insured had orally agreed upon coverage for both buildings and that the failure to read the insurance contract did not constitute such negligence as to preclude reformation. The Supreme Court affirmed the judgment.
In Robinson v. Union Automobile Ins. Co., 112 Neb. 32, 198 N.W. 166 (Sup. Ct. 1924), the court found that the insured and the agent had agreed to provide a full coverage policy which insured against liability, fire and theft, various kinds of casualties, and collision damage. The policy, as issued, omitted collisions and the omission was not discovered by Robinson until after a loss occurred. Reformation was ordered to include collision therein because of mutual mistake of the agent or fraud in failing to set forth the full protection agreed upon.
The Nebraska courts, as in New Hampshire, in reformation actions, do not follow the duty to read rule. When the contention was raised, however, the court said:
"* * * In this case, there was no laches on the part of the plaintiff, unless it was in his failure to examine and read his policy and ascertain therefrom that it did not cover collision insurance. The policy is long and contains many conditions and limitations, and we seriously doubt if one, other than a lawyer or one versed in insurance, would know, from a casual reading of the policy, that it did not cover collision insurance. * * *." (198 N.W. at page 169.)
In S.E. Slade Lumber Co. v. National Surety Co., 128 Cal. App. 419, 17 P.2d 775 (Dist. Ct. App. 1932), hearing *257 denied by Supreme Court February 24, 1933, the court discussed the effect of failing to read, saying:
"* * * it has frequently been decided that the mere failure to read an instrument with sufficient attention to perceive a defect in its contents does not prevent its reformation. * * * And this depends upon the circumstances of each particular case. [Citing cases.] In this last-named case (Siem v. Cooper, 79 Cal. App. 748, 250 P. 1106, 1108), the court said: `* * * Nor is the fact that the defendant failed to read the second instrument sufficient to preclude the trial court from granting relief. Such failure is an act to be explained, and where the testimony sufficiently explains such failure, it is removed from the case just as other acts of failure might be removed.' In the instant case respondent not only had the assurance of appellant's manager, Voss, that Mox, Inc., would be included in the policy, but an examination of the policy would not have disclosed that this customer was left out of it, for the reason that Mox, Inc., did not appear in the policy by name, but by the letters N.B. alone, and these letters were in the policy signifying a rating and purporting to carry insurance against Mox, Inc., to the extent of $10,000. Under these circumstances, no estoppel was created by the acceptance and retention of the policy." (17 P.2d at page 778.)
Again in Taff v. Atlas Assur. Co., 58 Cal. App.2d 696, 137 P.2d 483 (Dist. Ct. App. 1943), the court declared:
"While the mere failure to read a policy does not in itself necessarily prohibit a revision of the contract, yet such failure on the part of the policy holder is a circumstance to be considered by the court on the question of his negligence. So, also are the experience and the intelligence of plaintiff factors to prove his neglect. Unless the policy holder making such excuse gives a satisfactory explanation of his failure to read it, the trial court may be justified in rejecting his excuse and in denying the reformation. * * * In order to be relieved of the result of his failure to read his policy the insured must have exercised that degree of care ordinarily exercised by a reasonably prudent person under the same circumstances." (137 P.2d at pages 486, 487.)
See also: Stoltz v. National Indemnity Co., 345 Ill. App. 495, 104 N.E.2d 320 (App. Ct. 1950); American Employers' Ins. Co. of Boston, Mass. v. Lindquist, 43 F. Supp. 610, 615 (N.D. Cal. 1942); Central State Bank v. Royal Ind. Co., 167 Minn. 494, 210 N.W. 66 (1926); Tonkin v. *258 California Ins. Co., 294 N.Y. 326, 62 N.E.2d 215, 160 A.L.R. 944 (Ct. App. 1945).
Although no case has been found in this State which discusses the precise problem under consideration, it would seem to have been applied at least tacitly in Seymour v. German-American Ins. Co., 83 N.J. Eq. 37 (Ch. 1914), affirmed 84 N.J. Eq. 206 (E. & A. 1915).
In the Seymour case, the insurance policy originally covered a dwelling house. Then the house was altered for manufacturing purposes and the policy was endorsed accordingly on payment of an increased premium. At the expiration of the term, a new policy was issued covering the same premises and with the same premium but by error of the agent it had stamped on it a warranty that the building was occupied exclusively for dwelling purposes. The stamped portion was "very much blurred and almost, if not quite, unreadable." It was held that the mistake of the insured in supposing that the contract was like the previous one did not make him guilty of such carelessness as would bar reformation.
None of our cases of the Crescent Ring Co. type discusses whether the rule imposing the duty to read the policy should be applied strictly or with some tolerance toward the holder. While recognizing the binding force of the rule on this court, it seems to us that in applying it we should give due regard to the facts and circumstances of the particular case and to the equality or inequality of knowledge or opportunity for knowledge of the insurer and insured.
Upon a reading of the two endorsements on which appellant predicates the denial of responsibility, would a reasonably intelligent person realize that he was excluded from coverage or that the policy considered as a whole did not measure up to the understanding reached with Preiksat?
One limitation of use endorsement says that the insurance does not apply when the automobile is being driven by any person under the age of 25 except "Edward Gargano  Age 23."
It has already been noted that Gargano gave truthful *259 and accurate information to Preiksat as to his age. Who inserted the age as 23 years in the application after signature by him, does not appear specifically. Presumably it was done by the agent, and whether it was brought about by Preiksat's mistake in making or interpreting his notes or by his fraudulent act is not of critical importance. As already observed, the act, whether inadvertence or fraud of the agent under the circumstances presented, cannot of itself be taken advantage of to the detriment of the insured.
Thus, dealing with the endorsement itself, in the light of the honest disclosures of Gargano as to his age, in our judgment a reasonably intelligent person would conclude that, as a person under 25 years, he was an insured driver and that an inconsequential mistake had been made in setting forth his age. Failure to call this error to the attention of the company certainly ought not to be considered as the adoption of the misrepresentation or mistake in the application, about which he knew nothing, so as to bar his recovery under the policy.
Turning to the other limitation of use endorsement, we note that it is made part of the policy issued to Edward Gargano. And it recites that the insurance does not apply whenever the automobile is operated by any person who has been a licensed driver for less than one year; further, that newly licensed drivers may be added on with the written permission of the insurer.
Gargano had shown the agent his "initial" driver's license and Preiksat, after taking all of the necessary data, said not to worry, he was covered. There is no evidence whatever that a driver's license for more than one year was mentioned as a requirement of the insurance contract. In any event, it is obvious from the wording of the endorsement that it is a condition the company may waive.
What, then, would a reasonably intelligent person believe from a reading of the policy and the endorsement? As the application indicates, Gargano told the agent that, as the owner, he would be the driver of the car. And the policy was issued to him by the carrier through its exclusive general *260 agent, which was Preiksat's employer, with the imputed knowledge that the applicant was the holder of an operator's license for about three months.
A reasonably intelligent person would realize that since he was to be the driver, the policy would be worthless if he was excluded from coverage. But since he was conscious of the fact that the company knew of the duration of his license, and since the endorsement in question indicated that such new drivers could be added to the coverage with written permission, he would naturally decide that the exclusion did not, and was not intended to, apply to him. Otherwise, the policy would not have been issued to him. Or, if he considered the problem in terms of written permission from the company, he could assume reasonably that the issuance of the policy to him constituted such permission. "The endorsements must be read in the light of the policy." Prather v. American Motorists Ins. Co., 2 N.J. 496, 503 (1949).
Under all the circumstances presented, in our judgment the failure of Gargano to read the insurance contract does not estop him from prosecuting his action for reformation.
The trial court decided that because of the fraud of the agent, the imposition he practiced in obtaining the signature to the blank application, and the reliance by the infant assured upon his representations with respect to coverage, the policy did not express the mutual understanding of the parties. Consequently, he directed reformation thereof by striking the two endorsements from it.
The general rule on the subject of reformation is set forth in 29 Am. Jur., Reformation, § 242, as follows:
"If an insurance policy is not that intended or does not express the actual contract intended by the parties because of the fraud or inequitable conduct of the insurer's agent or because of the mutual mistake of the insured and such agent, a court of equity has the power to grant reformation of the policy so as to have therein expressed the true agreement of the parties. While there is some authority to the contrary, most courts hold that a policy may be reformed where it does not conform to the agreement of *261 the parties, although the mistake, insofar as the company is concerned, was that of a mere soliciting agent with no power to write or to issue a policy."
Here it is plain that if, by reason of the endorsement relating to the driver's license, the policy is construed to exclude the named insured from coverage, then it does not express the mutual understanding of the agent and Gargano. In that event, according to the factual conclusion of the trial court, which finds support in the evidence, that result must be considered as having been brought about by the fraud or inequitable conduct of appellant's agent, and the mistake of Gargano in believing that the contract measured up to their agreement.
In such a situation, where obviously the insured acted entirely in good faith, made truthful disclosures, relied on the agent's superior knowledge, experience and representations, and paid his premium, to deny reformation would be to grant the insurer an unconscionable advantage. Cf. Tokio Marine & Fire Ins. Co. v. National Union Fire Ins. Co., 91 F.2d 964, 967 (C.C.A. 2 1937); Beddow v. Hicks, 303 Ill. App. 247, 25 N.E.2d 93 (1940); 5 Williston on Contracts (rev. ed.), § 1548; Restatement of the Law of Agency, §§ 261, 268. Moreover, the inequity of a denial of relief is emphasized by two further factors: one, a reading of the policy would not have imparted actual knowledge that the policy holder was not covered; and two, the representations and conduct of the agent deprived Gargano of the opportunity to seek insurance protection elsewhere.
Under the circumstances, we agree that the action of the trial court in directing reformation was proper. Cf. Volker v. Connecticut Fire Ins. Co., 22 N.J. Super. 314 (App. Div. 1952); Nazzaro v. Globe & Republic Ins. Co., 122 N.J. Eq. 361 (Ch. 1937), affirmed 127 N.J. Eq. 279 (E. & A. 1940); Santamaria v. Shell Eastern Petroleum Products Inc., 116 N.J. Eq. 26 (Ch. 1934); Metropolitan Cas. Co. v. Friedley, supra; Commonwealth Cas. Co. v. Arrigo, supra.
Our attention thus far has been devoted to the consideration of the issue of reformation because the parties and the *262 trial court concerned themselves primarily with that problem. However, there is another and more direct ground upon which respondents are entitled to recover, namely, on the count for simple breach of contract.
To bring this theory into focus, it seems necessary to retreat to some fundamentals of insurance law.
It is well known that insurance contracts of the type involved here are construed most favorably to the insured. The courts look at them with the view that it was presumably the intention of the insurer to have the insured understand that in case of loss he would be protected to the full extent that any fair interpretation can give. Policies are construed liberally to uphold the compact between the parties; forfeitures are not favored and conditions creating them are interpreted strictly against the insurer and are never extended beyond the strict words of the condition. In seeking the intention of the parties, the instrument as a whole is considered; whenever possible, effect is given to all of its parts and a construction which gives a reasonable meaning to all its provisions is preferred to one which leaves it or some of its parts useless or inexplicable. And all ambiguities or doubts growing out of the language employed by the carrier in drafting the policy are resolved in favor of the insured. Caruso v. John Hancock Mutual Life Ins. Co., 136 N.J.L. 597 (E. & A. 1948); Jorgenson v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947); Nickolopulos v. Equitable Life Assur. Soc., 113 N.J.L. 450, 456 (E. & A. 1934); Gans v. Columbia Ins. Co., 99 N.J.L. 44 (Sup. Ct. 1924), affirmed 100 N.J.L. 400; Connell v. Commonwealth Cas. Co., 96 N.J.L. 510 (E. & A. 1921); Carson v. Jersey City Ins. Co., 43 N.J.L. 300 (Sup. Ct. 1881), affirmed 44 N.J.L. 210 (E. & A. 1882).
Appellants seek to have a forfeiture declared here on the basis of the two limitation of use endorsements. The one reciting the incorrect age of Gargano in fact confers coverage upon him. As we have said that misstatement resulted from the act of the agent and does not justify the invalidation of the insurance.
*263 Our earlier discussion of the other endorsement, which excludes coverage for drivers holding licenses for less than one year, makes it manifest that an ambiguity exists as to the real significance and purpose of its language. If the one paragraph of the endorsement containing the exclusionary language is considered in isolation, it would seem to exclude all less than one-year license holders. But when it is examined, as it must be, as a component part of an entire policy, serious doubts inexorably arise as to whether the intention was to exclude the policy holder, who was declared in the application to be the driver of the insured car. To hold that Gargano, the named assured, is excluded, is to make the endorsement the vital agreement, thus producing a forfeiture and rendering all the rest of the contract worthless to him from its inception. Without the endorsement, the policy can stand alone as the fulfillment of the mutual intentions of the parties; with the endorsement an ambiguity arises under the facts and circumstances of the case  particularly the fact of the carrier's imputed knowledge of the limited life of Gargano's license and that he was to be the driver of the vehicle  as to whether or not the policy was intended to apply to him.
Applying the general rules of construction already alluded to, we conclude that the ambiguity should be resolved in favor of the existence of coverage. Accordingly, the judgments of the trial court are valid.
An additional matter must be disposed of. The service contract is a separate and distinct agreement. Neither the application nor the policy nor the limitation of use endorsements are made part thereof. There being no fraud or misrepresentations on the part of Gargano, and the endorsements having no relation to the service agreement, the separate judgment representing damages for breach of this independent obligation must be sustained.
The other grounds for reversal have been studied and are adjudged to be without merit.
Accordingly, the judgments for respondents are affirmed.
*264 JAYNE, J.A.D. (dissenting).
While I am not in the least inappreciative of the colorful opinion of the majority which artistically spirals to a wholesome and beneficent result for the alleged insured, yet I cannot favor the rationale by which in the circumstances of the case the conclusion of the majority is escorted out of the reach of the settled principles of law in our jurisdiction.
In recognizing the theme of this cause of action in relation to the deportment of the alleged insured and the associated facts, I am apprehensive of the derivations of the majority opinion in our law designed to stabilize the terms and conditions appropriately, if not necessarily, embodied in policies of insurance.
I summarize the considerations to which I ascribe influential and inescapable significance:
1. This is an action in quest of equitable reformation.
2. Preiksat, an employee of the Automobile Association, was not empowered to consummate a contract of insurance. He was authorized to solicit applications for insurance.
3. It is inferred that Preiksat perpetrated a willful fraud in the composition of the application, but the plaintiff Gargano initially enabled him to do so by signing the application form in blank. In that regard this plaintiff was certainly inattentive and neglectful of his own interests in the absence of any undue influence, deceit or duress by which he was induced so to act.
4. The insurance company, in contrast, acted in good faith in reliance upon the representations contained in the application bearing in fact the genuine signature of the applicant, and it issued as would be expected the conformable policy.
5. Next, the plaintiff received the policy. Again he was remiss. He retained it, and other than to observe that he was the insured named therein he never examined it to ascertain its terms, conditions, and provisions until after the occurrence of the mishap which occasioned his liability.
6. In this case there is no special or exceptional reason to liberate as a matter of law the plaintiff from what has *265 long been supposed to be in our jurisdiction an obligation of an insured to examine the policy.
7. I am not persuaded that the relevant endorsements attached to the policy were more obscurely concealed therein than in policies generally.
8. Nor am I prepared to resolve that an insured is absolved from the duty to examine the policy by the mere circumstance that he is 17 years of age. There is no evidence that the plaintiff was unable to read and understand English or that the misunderstanding concerning the coverage was caused by the youthful age of the applicant.
9. Now with the foregoing observations in sight, my view broadens to enclose the further fact that in soliciting the application Preiksat was undoubtedly acting within the area of his employment, but I have the belief, deduced also from the absence of Preiksat at the trial, that in later falsely reporting to the insurance company the answers made to him by the applicant, he personally conceived and engaged in an independent fraudulent act solely for his own benefit and advantage. I cannot regard this case as one where the soliciting agent innocently misinterpreted the answers.
Basically, I conjecture, that which separates me from my learned colleagues in the decision of this appeal is a dissimilar conception of the equities arising out of the facts.
This is not an action to recover premiums paid, nor is it a suit for rescission.
The majority opinion gives birth to a ruling that an applicant who heedlessly signs an application for insurance in blank and voluntarily for his own convenience bestows upon the insurance solicitor the unrestricted privilege and opportunity to falsify the representations therein, may, if such occurs, ignore the terms of the policy he receives and nevertheless, by means of judicial reformation, contractually obligate the insurance company to pay for a loss manifestly never contemplated by the company nor by the terms of the policy issued, and ignored by the insured.
The relief granted by the majority is of such a substantial character, mind you, as to substitute in effect for a policy *266 clearly inapplicable to the risk, an artificial one which the insurance company would not knowingly have issued, certainly not for the same premium, and which the solicitor doubtless understood the company would not issue, but which in the exigency will retrospectively afford the plaintiff indemnity.
I am of the opinion that the equities do not preponderate in favor of the plaintiff and that the judgments should be reversed.