74 N.J. Super. 191 (1962)
181 A.2d 20
AMERICAN MERCURY INSURANCE COMPANY, A CORPORATION, PLAINTIFF-APPELLANT,
v.
CHARLOTTE R. BIFULCO, GENERAL ADMINISTRATRIX, ETC., AND SANTA LABRUZZO, ADMINISTRATRIX, ETC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1962.
Decided May 8, 1962.
*192 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Daniel G. Kasen argued the cause for appellant (Messrs. Kasen, Schnitzer & Kasen, attorneys).
Mr. Robert J. Inglima argued the cause for respondent Charlotte R. Bifulco, general administratrix and administratrix ad prosequendum of the estates of William A. Bradley, Jr., deceased, and George Bradley, deceased.
Mr. Benjamin Eber argued the cause for respondent Santa LaBruzzo, administratrix of the estate of Louis LaBruzzo, deceased (Messrs. Eber & Eber, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff insurance company brought a declaratory judgment proceeding in the Superior Court, Law Division, in which it sought a determination as to its legal liability under the terms of an aircraft liability insurance policy issued by it to insure Raritan River Garage *193 Company, trade name for Louis LaBruzzo, owner of the private airplane covered by the policy. Plaintiff joined as parties defendant Santa LaBruzzo, administratrix of the estate of Louis LaBruzzo, and Charlotte R. Bifulco, general administratrix and administratrix ad prosequendum of the Estates of William A. Bradley, Jr., deceased, and George Bradley, deceased, because of suits pending by them to recover damages for which the plaintiff might ultimately be liable on the aforesaid insurance policy.
LaBruzzo and the Bradleys lost their lives and LaBruzzo's plane was destroyed during the course of a flight on October 31, 1959, when the plane crashed into a mountain at or near Greenville, New York. LaBruzzo, who held only a student pilot certificate, was then and there operating the plane and the Bradleys were aboard for the ride.
Plaintiff's motion for a summary judgment of nonliability on the policy was denied, and defendants' motion for summary judgment that the policy covered this accident was granted. Plaintiff appeals.
The main issue on this appeal is whether the policy issued by the plaintiff covered the loss of or damage to LaBruzzo's aircraft while in flight, and the loss of the lives of the two Bradleys. Coverage under the policy depends upon the meaning of the word "passengers" in the following exclusionary provision of the policy, upon which plaintiff relies essentially to support its contention of noncoverage:
"This policy applies when the aircraft is in flight only while being operated by the following pilot(s): Louis LaBruzzo, student pilot (except while carrying passengers under a student permit) or any pilot holding a valid and effective private or commercial pilot's certificate and seaplane rating if the aircraft insured is a seaplane." (Emphasis ours)
As noted above, the insured aircraft was in flight and was being operated by Louis LaBruzzo, a student pilot holding only a certificate as such, and there was no other pilot aboard at the time of the fatal crash. Was LaBruzzo carrying *194 "passengers" so as to make coverage under the policy inapplicable?
Plaintiff contends that the word "passengers" in the foregoing exclusionary provision was intended by the plaintiff and the insured to mean all occupants of the plane other than the pilot. Defendants maintain that, in the absence of any definition of the word "passengers" in the policy, the trial court properly interpreted the word in its restricted legal meaning as referable only to fare-paying passengers and not to be applicable to mere "guest occupants." While the plaintiff's attorney refused to concede on oral argument that the Bradleys were "guest occupants" and not fare-paying passengers, the interpretation of the policy by the trial court is based upon the assumption that the Bradleys were merely "guest occupants," and our review of the correctness of that determination is necessarily based upon the same assumption. It is conceded that if the Bradleys were fare-paying passengers, the exclusionary provision of the policy noted above would obviously bar coverage.
The word "passenger" has various meanings, depending upon the circumstances under which and the context in which the word is used. Sometimes it is construed in a restricted legal sense as referring to "one who is being carried by another for hire." Restatement, Torts, § 490, comment (a). On other occasions, the word is interpreted as meaning any occupant of a vehicle other than the person operating it. As the court stated in Vogrin v. Hedstrom, 220 F.2d, 863, 865, 866 (8 Cir. 1955):
"Certainly the term `passenger' does not universally connote that the person is designated as a compensating passenger. Whatever its technical legal significance may be, in common parlance it means an occupant of a motor vehicle other than the person operating it and describes a physical status rather than a technical legal status, * * *."
As aptly noted in Emerson v. Carolina Cas. Ins. Co., 206 F.2d, 13, 16 (8 Cir. 1953), "it would be difficult, if not *195 impossible, to state a general rule or definition of a passenger which would embrace all essential elements under all circumstances." Reference, therefore, to other cases in which the word "passenger" has been construed is not too helpful because the connotation of the word must be determined in the particular factual context under consideration by the court.
"In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose." Tessmar v. Grosner, 23 N.J. 193, 201 (1957).
There is a well settled doctrine applicable to the construction of an insurance policy, "if the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow." Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, 35 N.J. 1, 7 (1961). This does not mean, however, that the courts will make a different contract from that which the parties themselves have made.
"When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties. * * * Absent stated prohibitions, an insurance company has the right to impose whatever conditions it desires prior to assuming its obligations and such provision should be construed in accordance with the language used." Kampf v. Franklin Life Insurance Co., 33 N.J. 36, 43 (1960).
"[W]here the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." Mazzilli, supra (35 N.J., at p. 8). *196 However, all rules of interpretation are subordinated to the requirement that "our courts will broadly search for the probable common intent of the parties, will consider their relations, the attendant circumstances and the objectives they were trying to obtain and will endeavor to find a reasonable meaning `in keeping with the express general purpose.'" Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962). Our task, therefore, is to determine what the parties to this insurance contract intended by the use of the word "passengers" in the policy provision noted above.
The policy in question was issued on September 16, 1959, effective August 12, 1959, and was based on LaBruzzo's written application therefor. LaBruzzo knew prior thereto that the holder of a student pilot certificate was prohibited from carrying passengers. His application of April 2, 1959 to the U.S. Department of Commerce, Civil Aeronautics Administration, for a student pilot certificate contained this written certification stamped prominently thereon and signed separately by LaBruzzo:
"I certify that I am aware that the holder of a student pilot certificate is prohibited from carrying passengers * * *."
The student pilot certificate itself, also dated April 2, 1959 and bearing LaBruzzo's signature, set forth plainly on its face this express limitation:
"Passenger Carrying Prohibited."
This limitation was pursuant to Civil Air Regulation 43.52 which provides:
"No student pilot shall pilot aircraft carrying a passenger or on an international flight or for compensation or hire or in furtherance of a business."
The use of the disjunctive "or" in the above regulation indicates that the prohibition against carrying passengers *197 was not limited to those who paid compensation for the ride, but covered passengers generally. This conclusion is supported by Safety Bulletin No. 177-47 issued by the Safety Bureau of the Civil Aeronautics Board and entitled "Students ... Don't Fly Passengers." Therein, student pilots are reminded of the above regulation and warned of the danger "to student and passenger." Certainly, this danger would not depend upon whether the passenger paid or rode free as a guest. We note these excerpts from this safety bulletin:
"Student pilots are forbidden to carry passengers and have been since 1927 when the Federal Air Laws went into effect. And yet they continue to do so, often with personal harm or death to themselves and their unsuspecting passengers. * * * The situation is very much like riding in an automobile with an inexperienced driver who has no license, or is under age, or is in some way outside the law * * *. Hour for hour flown, students with passengers are far more apt to get into serious trouble than students without passengers. This can be shown readily by crash records on file with the Civil Aeronautics Board. There's little doubt that it is caused by the resulting lack of attention to the job at hand by the student while showing off to his passenger or taking him on a personally conducted  but very amateurish  air tour. * * * A few students even had accidents while trying to get into out-of-way landing spots to pick up some friend for a ride  the outcome of the `ride' often being as lethal as the underworld method of liquidating someone."
This strong language makes it clear that the governmental regulations prohibiting student pilots from carrying passengers make no distinction between a fare-paying passenger and a guest occupant.
The Uniform Aeronautics Law, adopted in New Jersey as L. 1929, c. 311, now R.S. 6:2-1 et seq., defines "passenger" in R.S. 6:2-1 as follows:
"`Passenger' includes any person riding in an aircraft but having no part in its operation."
This definition includes guest occupants as well as fare-paying passengers. Compare the California Air Navigation *198 Act which distinguishes between a "passenger" and a "guest," as pointed out in Whittemore v. Lockheed Aircraft Corp., 51 Cal. App.2d 605, 125 P.2d 531 (Ct. App. 1942).
Parties to a contract are presumed to have entered into it in compliance with the law. Compare Gunther v. Metropolitan Cas. Ins. Co., 33 N.J. Super. 101, 111-114 (Law Div. 1954), approved in Bauman v. Royal Indemnity Co., 33 N.J. 12, 21 (1961). When the plaintiff and LaBruzzo entered into this insurance contract and the policy expressly excluded coverage while LaBruzzo, the student pilot, was "carrying passengers under a student permit," it is fair to assume that the parties to the agreement did not intend to insure a risk which they knew was contrary to law. While under some circumstances the word "passengers" might be ambiguous and require under established principles a construction against the insurance company which prepared the policy, we do not find such ambiguity in the instant policy under the circumstances of this case. We conclude that the intention of the parties in this case was that coverage would not exist under the policy if the plane was being operated by LaBruzzo, while still holding only a student pilot certificate and carrying riders, whether fare-paying or as guests.
Defendants point out that the application for insurance showed that LaBruzzo indicated "Industrial Aid" as the purpose for which he intended to use the aircraft being insured, and that he sought coverage for bodily injury liability to "occupants" and for property damage liability. Item 6 of the policy notes that the purpose for which the aircraft is to be used is "Industrial Aid," which is defined in the policy as "Personal, Pleasure, Family and Business uses, including transportation of executives, employees, guests and customers * * * but excluding any operation for which a charge is made." (Emphasis ours.) The policy also specifies among its coverages "Aircraft occupant bodily injury liability," and under its definitions states:
*199 "The word `occupant' means any person in, on or boarding the aircraft for the purpose of riding therein or alighting therefrom following a flight or attempted flight therein."
From the foregoing, defendants argue that coverage of "guests" and "occupants," other than persons for whom a charge was made, was intended.
We agree that "guests" and "occupants" for whose transportation no charge was made would have been covered by this policy, if the aircraft were being operated by a regularly licensed pilot, as contrasted with a mere student pilot. The policy did not limit operation of the plane to LaBruzzo alone. As noted above, the limitation on carrying passengers applied only to the operation by a student pilot, LaBruzzo. This exception did not apply when the plane was being operated by "any pilot holding a valid and effective private or commercial pilot certificate."
"In seeking the intention of the parties, the instrument as a whole is considered; whenever possible, effect is given to all of its parts and a construction which gives a reasonable meaning to all its provisions is preferred to one which leaves it or some of its parts useless or inexplicable." Heake v. Atlantic Casualty Ins. Co., 29 N.J. Super. 242, 262 (App. Div. 1954).
Guided by that rule, it seems clear that the insured enjoyed coverage under this policy when it was being used for any of the purposes defined under the classification "Industrial Aid," and such coverage included bodily injury liability to guests and occupants and property damage liability, provided the plane was being operated by a "pilot holding a valid and effective private or commercial pilot certificate." The policy also covered specified losses when the plane was being operated by LaBruzzo, a student pilot, provided he was not carrying passengers, meaning any person other than the operator. Therefore, under the express condition of this policy, there was no coverage for this accident, because LaBruzzo was carrying the Bradleys as passengers, even if they were non-paying riders.
*200 Under the circumstances, we need not decide plaintiff's further contentions.
The summary judgment in favor of the defendants is reversed and the matter is remanded to the Law Division for entry of judgment of nonliability on the policy in favor of plaintiff.