LUCILE R. CORRIGAN, APPELLANT, V. FIREMAN'S FUND
INSURANCE COMPANY, A CORPORATION, APPELLEE.

141 N. W. 2d 170

Filed March 25, 1966. No. 36094.

Young, Denenberg & Mullery, for appellant.

Gaines, Spittler, Neely, Otis & Moore and Michael T. Levy, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is an action to reform a major medical insurance policy and for judgment for the amount claimed to be due under the terms of said policy. Judgment was entered for the defendant, Fireman's Fund Insurance Company, a corporation, hereinafter referred to as defendant, and plaintiff, Lucile R. Corrigan, hereinafter designated as plaintiff, perfected an appeal to this court.

Plaintiff alleges that one Richard J. O'Brien, Jr., hereinafter referred to as O'Brien, sold her the policy. Plaintiff discussed with O'Brien the insurance under which she was covered at that time, including Blue Cross and Blue Shield and two small policies issued by Mutual of Omaha. O'Brien advised plaintiff that she should purchase the policy in question and let the Mutual policies expire. Plaintiff signed an application supplied by O'Brien to secure the instant policy.

One of the questions contained in said form is as follows: "What other hospital or surgical insurance are you or any of your family members named above applying for or carrying?" This was left blank by the plaintiff and was subsequently completed by O'Brien by marking an "X" in the box adjoining the word "None." Plaintiff alleges that she was informed that O'Brien construed this to be the proper answer to the question concerning other insurance, inasmuch as none of the insurance covering the plaintiff at that time was of the major medical type. Plaintiff did offer a copy of a letter written to defendant by O'Brien subject to the claim, in which he states as follows: "I know that Mrs. Corrigan did not tell me an untruth, and she maintains that I filled out that answer. If I did check that block—which I could have—I probably thought that the question pertained to any other major medical type of insurance."

Plaintiff further alleges that at the request of O'Brien she signed a form authorizing her family physician, hereinafter referred to as Doctor Hartigan, to furnish information relative to her medical history. The answer

to the question on medical history was left blank on the application when it was delivered to O'Brien so he could have it properly completed. O'Brien submitted the application form to Doctor Hartigan for completion, and it was then returned to O'Brien. The answer supplied by Doctor Hartigan was as follows: "Been in hospital for treatment of gastric ulcer in 1954. Have had periodic physical exams since then, & in the hospital in March, 1962, for active viral pneumonitis. Dr. J. D. Hartigan."

Defendant, for answer, alleges that the policy was obtained by the plaintiff through false statements and the concealment of material facts which materially affected both the acceptance of the risk and the hazard assumed by the defendant, and that said policy would not have been issued had truthful disclosure been made. Defendant also cross-petitioned, praying that said policy be adjudged to be void and of no force and effect, for the reason that plaintiff concealed other medical coverage and that the information supplied by Doctor Hartigan in the medical history was false or a concealment in that it did not include all of plaintiff's ailments, diseases, and body impairments.

It is the defendant's contention that the coverage by Blue Cross and Blue Shield, which was supplied by the employer of plaintiff's husband, and two Mutual of Omaha policies should have been reported in plaintiff's application, and a more complete medical history should have been supplied. The claim involved in this action covers a hospitalization starting October 9, 1962, for an inflamatory condition of the back. The complaint was a pain across the lumbar spine. A laminectomy was performed in late November 1962. It is defendant's position the policy would not have been issued if full information had been furnished.

The evidence discloses that on an occasion in 1956 plaintiff consulted Doctor Hartigan for a sudden pain in the lower back, which occurred when she bent to pick up a child. The doctor diagnosed it as back strain

and gave her a muscle relaxant. She had discomfort for about a week and it went away. Thereafter she carried on all of her regular activities without any trouble. In 1957 she was hospitalized for a sinus infection. In May 1960 she had a low back strain which occurred when she reached across the bed to pick up the telephone. She made one visit to Doctor Hartigan and he gave her a prescription and prescribed a corset-type garment which she wore for about 2 weeks. She had no further back trouble and was able to do heavy housework, regular office work, and to engage in swimming, golf, and other sports. While hospitalized for viral pneumonitis in March 1962, a dilatation and curettement procedure, which is a diagnostic test, was performed, and a negative report for carcinoma was obtained. Inasmuch as the test was negative, Doctor Hartigan thought it was not of significance and did not list it.

Doctor Hartigan testified that in completing the form he referred only to those episodes which he thought were of major significance. There was no connection between the dilatation and curettement and the disability for which the present claim was made. It was also his opinion that there was no connection between the difficulty in October 1962 and the backache in 1956 or the back strain in 1960. His opinion was that the difficulty in October 1962 had its onset when the clinical symptoms began to appear, which was 2 weeks before the hospitalization.

The court specifically found that the plaintiff informed O'Brien of the policies with Mutual of Omaha and of a policy carried by her husband's employer which covered the plaintiff, and that the medical history was furnished by Doctor Hartigan after the application was signed by the plaintiff. The court further determined that the application contained false statements materially affecting the acceptance of the risk; found the policy to be void; and denied plaintiff all benefits thereunder.

Plaintiff testified that O'Brien visited her while she

was hospitalized in March 1962, and that they discussed the policies she had, including the coverage by Blue Cross and Blue Shield provided by her husband's employer. O'Brien told her the Mutual policies were outdated and suggested major medical coverage with the defendant. Subsequently, O'Brien visited her at her office, examined the Mutual of Omaha policies, and recommended the policy involved herein.

It is the testimony of plaintiff's husband, who also purchased a policy from defendant, that a full disclosure was made to O'Brien; that O'Brien told him the Mutual of Omaha policies were obselescent and should be permitted to expire; and that the policy herein, with their Blue Cross and Blue Shield, should give them sufficient coverage.

Plaintiff testified that O'Brien gave her the application form, asked her to fill out the personal information, and to sign a release so that the company could secure her medical history from her physician. They talked about her previous medical history, and O'Brien told her he knew Doctor Hartigan was her medical doctor and he would take the form to Doctor Hartigan and see that it was filled in by the doctor because he had all of her records.

O'Brien, defendant's agent, was called as a witness for the plaintiff. Although his testimony is evasive to the extreme, it does corroborate the plaintiff's story in essential respects. O'Brien admits that he discussed hospitalization insurance with the plaintiff while she was hospitalized in March 1962, and that he subsequently called on the plaintiff at her place of work. The application was signed on April 17, 1962. O'Brien testified that he does remember that they discussed present insurance coverage because she was just out of the hospital and she was collecting on some policies then in existence. He does remember that plaintiff's husband had a group policy and he thinks something was mentioned about the Mutual policies. He does not remember

whether the group policy was referred to specifically as Blue Cross and Blue Shield. He also testified that he knew they were going to have to get the information on her medical history from her doctor, so he had her sign an authorization to permit the company to obtain that information. He testified that it was his recollection that the question of other insurance was left blank, "* * * that there was no mark in that block." He does not know who put the "X" in the box, but he does know that it was blank when it was received in his office.

Relative to the question on medical history, O'Brien's testimony is as follows: "Q. In what connection? Tell the Judge the gist of the conversation as best you can recall. A. Well, as I mentioned, we were discussing hospitalization insurance because she just come out of the hospital. I had a brochure in my possession from Fireman's Fund which said it was catastrophe hospitalization insurance. I said, 'Lucile, here is something that might be helpful to you and you might have some benefit or use for it.' We started to look it over and we came to the question 'Medical History.' She said, 'I give up, I know nothing about this.' We discussed at that time maybe she should find some medical man to help her fill that out. I know at that time Dr. Hartigan's name was mentioned, being the family doctor for the Corrigans since they had been in Omaha."

On this point, plaintiff testified as follows: "Q. What did he say about filling in Items 3 and 4? A. He said, leave it blank and he would have Dr. Hartigan fill it in. * * * Q. Now were you asked to sign anything else in connection with the securing of this information from Dr. Hartigan? A. He asked me to sign the Release to the Doctor which would release all my medical records to the Fireman's Fund people. Q. I will ask you to examine this Exhibit No. 11 and tell me if it contains the release of medical information that you signed? A. The Doctor's authorization here on the bottom, I signed this." It is plaintiff's testimony that she then gave the

application to O'Brien. O'Brien thought the application was mailed to his office but could not remember by whom. We are convinced that the logical inference from the evidence is that O'Brien left with or sent the form to Doctor Hartigan to be completed, and that the form was then returned directly to O'Brien.

Defendant cites Beideck v. National Fire Ins. Co., 139 Neb. 171, 296 N. W. 873, to sustain its contention that the burden of proof for reformation rests on the plaintiff. In that case, we said: "In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory and if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties." There is no question this is the rule in Nebraska.

The difficulty with defendant's position, however, is its premise that somehow plaintiff failed to meet this burden. As we read the record, there is no important point on which the plaintiff's evidence is actually disputed. The proof herein is not doubtful but is conclusive that defendant's agent O'Brien was fully informed and the plaintiff did not know that the information given to him had not been communicated to his principal. On this record there is not one scintilla of evidence that the plaintiff in any way misrepresented the insurance she held, or her medical condition.

Defendant takes comfort from section 44-710.14, R. R. S. 1943, which provides: "The falsity of any statement in the application for any policy covered by this act may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Defendant urges that in this instance its only burden

is to show the falsity of statements in the application, and that except for such false statements, the policy would not have been issued. Defendant's hurdle is the fact that the plaintiff made no false statements. The plaintiff acted in complete honesty and in good faith. We have no quarrel with the many cases cited by the defendant on false statements and misrepresentation. The difficulty is that they are not applicable to the fact situation herein.

Defendant, to sustain its contentions, quotes at length from our opinion in Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496. In addition to not being applicable on the facts in this case, the following from Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780, is a complete answer to defendant's reliance on it: "The discussion of that subject (contradicting by oral evidence parts of an application for insurance) and the rule adopted in that case are limited to actions at law for a recovery on the policy and are not pertinent to this or any case in equity to reform, cancel, or rescind an insurance contract."

Plaintiff gave full information to defendant's agent about other insurance she carried, and for the purpose of this action this constitutes a full disclosure to the defendant. Defendant's agent concedes that the application was delivered to him with the question pertaining to the other insurance left blank, and that it was completed incorrectly after it was received in his office. His explanation as to the failure to list plaintiff's other policies is that he thought the question pertained only to other major medical insurance. If an incorrect answer is inserted in an insurance application by an agent of the insurer when correct information was given to him by the insured, the insurer cannot rely upon such answer in an action in equity to rescind or reform the policy issued on the application. Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d

780. See, also, 4 Couch on Insurance (2d ed.), § 26:276, p. 180.

It is true Doctor Hartigan did not list plaintiff's complete medical history. He listed those episodes he deemed to be of major significance. It is defendant's contention that the plaintiff appointed Doctor Hartigan as her agent for the purpose of giving response to the medical questions, and that she is bound by his statements. But here again, as we construe the evidence, it was defendant's agent who undertook the responsibility of securing the medical history from Doctor Hartigan. By so doing he assumed the responsibility for the adequacy of that report, and this can in no way constitute a misrepresentation or concealment on the part of the plaintiff.

It should be noted that the information was obtained by O'Brien after the application had been signed by the plaintiff and had been delivered to him. What plaintiff did was to authorize O'Brien, defendant's agent, to obtain complete information from Doctor Hartigan. In this respect, we call attention to section 44-329, R. R. S. 1943, which provides: "Every agent or broker who shall solicit an application for insurance of any kind shall, in any controversy between the insured or his beneficiary and the company issuing any policy upon such application, be regarded as representing the company and not the insured."

Defendant urges that the plaintiff had ample opportunity to correct the falsity of the statements, particularly the medical history furnished by Doctor Hartigan upon receiving the policy which contained a copy of the application upon which the policy was issued. Plaintiff's evidence is that she did not read the policy but upon its receipt placed it with her other papers.

The following from Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780, is a sufficient answer to defendant's contention: "The appellant argues that the retention of the policy with a copy of

the application attached thereto by appellee was a ratification and adoption of all statements appearing in the application; that appellee is estopped from asking or having reformation of the application; and that the insured was bound as a matter of law to know the contents of the application. When the insured states the facts correctly to the agent of the company, he is not bound to exercise vigilance thereafter to determine whether or not the agent exercised care, good faith, or truthfulness in his transactions on behalf of the company. The company is estopped from seeking to avoid its contract because of a mistake or fraud committed by its agent, if the insured acted in good faith, although he may have been negligent. The case of Robinson v. Union Automobile Ins. Co., 112 Neb. 32, 198 N. W. 166, is pertinent to this contention. Therein it is said: 'It is next contended that, where a party accepts a contract of insurance and makes no effort to examine or read the policy until a loss occurs, he is bound by the terms of the policy as written. Several authorities are cited as sustaining this principle, * * *. The cases cited, however, in the main are actions on contracts as written and where one or the other of the parties seek to avoid the legal effect of some clause in the contract of which he had no personal knowledge. They are not actions for reformation of the contract. In such an action, where one party seeks the aid of a court of equity to require the contract to conform to the actual intent and agreement of the parties, a different rule is applicable. It is a general principle, sustained by abundant authority, that if, by inadvertence, accident, or mutual mistake, the terms of the contract are not fully set forth in the policy, it may be reformed so as to express the real agreement.' See, also, Mogil v. Maryland Casualty Co., 147 Neb. 1087, 26 N. W. 2d 126."

We hold that where an insured can prove that he truthfully provided correct information to complete an insurance application, he may have the policy reformed

in equity, and the mere fact that he retained the policy and did not examine it until after a loss occurs will not prevent reformation. Plaintiff herein was entitled to reformation and to judgment in accordance with the terms of her contract.

The judgment herein is reversed and set aside, and the cause is remanded to the district court with directions to enter judgment for the plaintiff in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.